BONNETTE et al. v. BONNETTE.*
No. 5095.

Court of Appeal of Louisiana.
Second Circuit.
June 4, 1935.

John R. Hunter, of Alexandria, for appellant.

K. Hundley, of Alexandria, for appellees.

TALIAFERRO, Judge.

The Maccabees, a fraternal benefit association, admitted the late Dr. James V. Bonnette, of Alexandria, La., to its membership, and on October 1, 1923, issued to him its benefit certificate (ordinary life) in the sum of $1,000, wherein his minor son, by his second wife, James S. Bonnette, was designated the beneficiary.

In June, 1932, Dr. Bonnette suffered a paralytic stroke, but recovered therefrom sufficiently to resume office practice. He experienced another stroke on January 3, 1933, and died therefrom on January 25th. The insurance certificate was then in force. On January 4th, he signed his name on the reverse side of said certificate, in a blank space below the following printed caption, "Designation of Change of Beneficiary," indicative of his desire to change the beneficiary therein from James S. Bonnette, then of age and a college graduate, to his young daughter, Lolla Ruth Bonnette, issue of his marriage to his third wife. The sufficiency of this evident intent and purpose to effect a change of beneficiary is at issue in this controversy.

Dr. Bonnette's surviving widow did not live very long after his death. His brother, Dr. Jacob M. Bonnette and the Guaranty Bank & Trust Company, of the city of Alexandria, La., were appointed cotutors to the minor Lolla Ruth. Being informed of the dispute between the original beneficiary and the representatives of the substituted beneficiary over the proceeds of the certificate, the Maccabees deposited the amount admitted to be due thereunder by it in court and impleaded the contestants for the purpose of asserting their respective contentions thereto, and of having the court pass thereon.

James S. Bonnette's contention is reflected from the following excerpt from his answer: "* * * That he was named in the original certificate, No. 904227, issued by The Maccabees to James V. Bonnette as the beneficiary, and that no change of beneficiary was ever affected during the lifetime of his father. That application for change of beneficiary was not signed by his father, as required by the rules of The Maccabees; and that even if it had been, the application for change of beneficiary was not approved until January 27, 1933, or two days after the death of his father." And in the alternative, he avers that: "At the time of the said signing of said application for change of beneficiary, his father did not possess the mental capacity to make said change, but on the contrary was suffering from a fatal illness and was paralyzed and his brain function was so completely benumbed as to not leave any mental capacity to transact any business or enter into any contract or to understand the nature of any act which he might have been called upon to do."

On behalf of the minor, it is contended that in said certificate the right was reserved to

and by the insured to change the beneficiary therein at will, and that availing himself of such right, the insured "requested The Maccabees to change the beneficiary from the said J. Saunders Bonnette to the minor herein; that the insured complied with all of the requirements of The Maccabees with reference to said change of beneficiary, and said change was actually made by said Maccabees, as it had every right to do; that, therefore, the proceeds of said policy, the amount deposited in the registry of the court, should be paid to appearers as financial cotutors to said minor, and for the use and benefit of said minor."

The lower court, in a well-reasoned opinion, held that the efforts of Dr. Bonnette to change the beneficiary of the policy effectuated their purpose and awarded the proceeds to the tutors of the minor, Lolla Ruth. James S. Bonnette appealed from this judgment.

 The testimony is conclusive that the paralytic stroke of January 3d materially affected Dr. Bonnette's mental faculties and impaired his physical powers to a serious extent. His mind became inaccurate and unstable. He could only move about in bed or get in a chair with assistance; yet he was able to concentrate sufficiently to talk briefly of business matters and did understand, until a very few days prior to his death, the nature and effect of papers to which he affixed his signature. There is serious dispute between witnesses of the respective sides on this issue, but we are convinced, as was the trial judge, that deceased signed his name on the policy for the purpose of changing the beneficiary therein, and that he was in possession of his mental powers at the time he did sign it, to a degree that he well knew what he was trying to do. In this regard he did all within his power at the time to make the change. The burden rested on James S. Bonnette to prove mental incapacity to make the change. 45 Corpus Juris, 303. The testimony preponderates in the opposite direction.

██ It appears that a few days prior to January 4th, the day following the last stroke, Mr. H. J. Rush, record keeper of the Tent of the Maccabees, at Alexandria, was summoned to the Bonnette home, and on his arrival there Dr. Bonnette explained that he was short of cash money and desired to secure a loan against this insurance certificate. Rush informed him that such could be arranged, but its closing would be delayed until he could procure from headquarters in Detroit, Mich., the necessary blanks there-for; that the blanks were sent to him and he delivered them in person to Mrs. Bonnette. It also appears from Rush's testimony that he was again called to the Bonnette home on January 4th, and that Mrs. Bonnette, in the presence and hearing of Dr. Bonnette, informed him that the doctor desired to change the beneficiary in the certificate to his little daughter; that the certificate was brought forward and Mrs. Bonnette, in a blank space thereon, under the words "date endorsed," wrote the figures "1/4/33," and beneath the word "beneficiary," wrote "Lolla Ruth Bonnette," and following this, under the words "endorsed by," Dr. Bonnette affixed his signature. All of this was written in the space on the reverse side of the policy under the printed words "Register of Change of Beneficiary." It is certain, however, these blank spaces were not intended to be utilized by the insured to evidence a change by him in the beneficiary, but were reserved for use by the association after the evidence of the desire to change the beneficiary had been submitted to it. He was evidently led to believe from Rush's actions and statements that by signing the policy as he did, after the name of the new beneficiary was inserted therein, the change would be effected. Rush says there were present when this writing and signing were done, only himself and Dr. and Mrs. Bonnette. The latter died before this suit began; therefore, Rush only survives to give testimony of the facts. These facts disclose on the part of Dr. Bonnette, at a time he doubtless knew his days were numbered, the definite desire to devolve upon his young daughter the same protection he had vouchsafed for the minor son when the insurance was originally effected.

The testimony does not definitely disclose the fact, but it at least inferentially appears that this policy was promptly sent to associational headquarters at Detroit, possibly for the twofold purpose of having the change of beneficiary indorsed thereon, and of having noted thereon the fact that it had been pledged as security for the loan then being arranged; and it is also inferentially disclosed that the association, on receipt of the policy, forwarded to Mr. Rush, or the Bonnettes, one of its regular blank forms for application for change of beneficiary. This was filled out by Mrs. Bonnette who, on account of her husband's physical and mental condition, signed his name thereto, by herself. The application, with a letter fully explaining the circumstances of the whole matter, written by Mrs. Bonnette and signed by her and Mrs. R. O. Bush, Dr. Bonnette's daughter by his first wife, was

then mailed to Detroit. Approval of change of beneficiary was indorsed thereon on January 27th, two days after the doctor's death, while notation of pledge thereof to secure a loan of $322 to Dr. Bonnette, bears date of January 25th.

Under "Conditions and Privileges" of the certificate, it is specifically provided: "The member may change the beneficiary at any time during his lifetime."

No sacramental form for effecting the change is suggested in the certificate. On the face of this "privilege," only the member's volition, definitely expressed, was needed to make the change. It is contended, however, on the part of appellant that paragraph 9 of said "Conditions and Privileges" should be considered in determining the extent of the right of the member to change the beneficiary. This paragraph provides: "It is agreed by the member holding this certificate that the certificate, the charter or articles of incorporation, the laws of the association, and the application for membership, medical examination, and application for transfer, if any, signed by the applicant, with all amendments to each thereto, shall constitute the agreement between the association and the member; * * * "

And it is further contended that the by-laws of the association require a formal application for change in beneficiary to and approval by it before such change becomes effective; but the by-laws relied on, or other records of the Maccabees, to support this contention, were not introduced in evidence. We cannot presume their contents. It devolved upon appellant to produce this evidence if it would support his position. The fact that he did not do this certainly raises no inference unfavorable to appellees. It is true counsel elicited from Mr. Rush that the insurer required execution by the member of formal application for change of beneficiary and delivery thereof to it before the change would be approved, but this witness also testified that the method of effecting the change, adopted by Dr. Bonnette, met the requirements. He certainly led Dr. and Mrs. Bonnette to so believe. This testimony of Rush's, however, was objected to by counsel of the appellees on the ground that the rules and by-laws of the association were the best evidence on the subject. It was admitted, in so far as it did not "conflict with the written provisions of the policy." The objection was well taken. These records are the best evidence of their contents, but the testimony cannot be given weight, even under the court's ruling, as it is in conflict with the provisions

of the policy giving the member the right to change the beneficiary thereof at will.

It does not reasonably follow from Rush's testimony, should we consider all of it, even when weighed in the light most favorable to appellant, that the association's rules and by-laws specifically provided that the completed change of beneficiary by the member would not become effective until and unless it registered its formal approval of the change. Of course, for the association's own information and to maintain a complete and systematic record in each case, it required that it have definite evidence of a change in beneficiary, and in furtherance of this rule and policy, it would furnish to the member on request formal blank to be executed by him in furtherance of his desire for the change.

In Smith v. Grand United Order of Odd Fellows of Louisiana, 17 La. App. 532, 136 So. 124, 125, it was held: "It is urged that the by-laws of defendant were not introduced in evidence, and therefore it is not shown that the change of beneficiary was made in accordance therewith. When plaintiff offered the policy and proved the change of beneficiary, she had made out a prima facie case, and it was then incumbent upon the defendant to show that the change was not made in accordance with the rules and laws of the defendant institution. This it failed to do. However, there is in evidence the judicial admission of defendant that the change of beneficiary was made in accordance with the rules and laws of the defendant institution. Without said judicial admission, it is to be presumed that the change of beneficiary was regular and in accordance with the laws of the defendant institution, unless there is proof to the contrary."

In Metropolitan Life Insurance Co. v. Lewis (La. App.) 142 So. 721, 723, the court considered the efficacy of an attempted change of beneficiary, which was approved by the insurer after the death of the insured, wherein it was stipulated in the policy specifically the course to be followed to effect the change. This course had not been fully complied with. The attempted change was abortive. In the course of the opinion the court said: "There is a wide distinction between the case at bar and one where the policy reserves the right to the insured to change the beneficiary without specifically defining how that change may be made."

Corpus Juris, vol. 45, p. 203, states the general rule to be: "In the absence of any regulations in the statutes or the charter or laws of the society concerning the mode of changing beneficiaries, a change may be made in any

way. the member may choose, so long as he expresses a clear intent to make the change." See Kimbal v. Life Ins. Co., 8 La. App. 228.

In the present case the member did clearly express an intention and a desire to change the beneficiary. The motive prompting him to do so is obvious. The original beneficiary had been well educated, was of age, and able to shift for himself; not so with the substituted beneficiary.

We are of the opinion that the lower court correctly decided the case. The judgment appealed from is affirmed.