## WASHINGTON v. DISTRICT GRAND LODGE NO. 21, GRAND UNITED ORDER OF ODD FELLOWS OF LOUISIANA.

### No. 1554.

Court of Appeal of Louisiana. First Circuit.

Dec. 31, 1935.

Charles E. Fernandez, of Franklin, for appellant.

James R. Parkerson, of Franklin, and F. B. Smith, of New Orleans, for appellee.

ELLIOTT, Judge.

Emma A. Washington, named as the beneficiary in an insurance policy issued in favor of George Washington by District Grand Lodge No. 21, Grand United Order of Odd Fellows of Louisiana, brought suit against the said District Grand Lodge No. 21, etc., to recover of it the sum of $500 claimed as the amount due her under the policy.

The suit was filed November 27, 1933. The policy sued on is annexed to and made part of the petition.

On March 5, 1934, the plaintiff filed an amended and supplemental petition making a further and alternative averment, the substance and effect of which was that she was not the designated beneficiary of the insured; that the insured had changed the beneficiary from herself to Betty Ross, his alleged mother; that Betty Ross was not dependent on the insured for support and insured's alleged father and mother were not legally married; that the change in beneficiary was not effective for said reasons. Judgment was prayed for in her amended and supplemental petition as prayed for in her original petition.

The defendant, answering plaintiff's petition, does not mention her amended and supplemental petition, but the averments contained in it are substantially answered and put at issue by defendant's answer.

Defendant's answer sets up as a defense that the plaintiff is not the beneficiary of the insurance in question; that the beneficiary was changed from the plaintiff to Betty Ross, insured's mother, and paid to insured's mother. It is prayed that plaintiff's demand be refused and rejected.

Judgment was rendered rejecting plaintiff's demand. Plaintiff has appealed.

Defendant's answer, referring to article 6, says: "Article six is admitted." The record shows that the insurance in question has been paid to Betty Ross. The purpose of the present suit is to compel payment to plaintiff, on the theory that it was not due Betty Ross. Taking the position that her amended and supplemental petition filed previous to the filing of defendant's answer had substituted a new article for article 6 of her petition as amended, and that due to this substitution article 6 in her petition, alleging nondependence of insured's mother and that his father and mother had not been legally married, had been admitted, she moved against defendant for judgment on the face of the papers. Her motion was overruled. Plaintiff prays that this ruling be reviewed and set aside and that she have judgment against defendant on the face of the papers. She sets up four grounds, each of which she contends amounts to an admission of her right to judgment on the face of the papers:

First. That Betty Ross was not dependent on the insured.

Second. That Betty Ross and Frank Washington, said to have been the father of George Washington, were not legally married.

Third. That when the beneficiary was changed from Mrs. Emma A. Washington to Betty Ross the change was without effect in either law or fact.

Fourth. That because of the aforesaid admissions the plaintiff was entitled to the proceeds of the policy.

The lower court in acting on her motion states very fully his reasons for overruling it. The substance of his conclusions is summed up in the latter part of his opinion on the subject. We take the following excerpt from the latter part of the opinion in acting on her motion:

"In this alternative plea plaintiff pleads the truth of the change of beneficiary but attacks the legality of the naming of said beneficiary on two grounds, as pleaded. Therefore it is readily seen that there is a clear cut issue between the litigants, and that is the legality of the change of beneficiary, the effect of such change and the person entitled to the proceeds as between plaintiff and the second beneficiary alleged to have been named."

Plaintiff's contention is based on article 2 of her amended and supplemental petition, which reads as follows:

Article 2. "That she desires to amend her original petition so that as amended it will contain an additional article, said article to be designated and identified by the number 6, and to take the place of article 6 of plaintiff's original petition; henceforth article 6 of plaintiff's original petition to be designated and identified by the number 7, which said additional article shall read as follows, to-wit:

"In the event and only in the event that this honorable court should find that plaintiff's demand as set forth in her original petition is not well-founded in fact or in law, then petitioner alleges in the alternative that she has been reliably informed and therefore believes and avers that George Washington, the insured, changed the designation of his beneficiary on May 31, 1929, from petitioner to one Betty Ross, his alleged mother, who was not dependent upon him for her support, and the said change was without effect either in law or in fact, for the reason that the said change was contrary to the provisions of section 6 of Act No. 256 of 1912 and to defendant's constitution and by-laws, in that Frank Washington, the insured's alleged father, and Betty Ross, the insured's alleged mother, were not legally married."

The reasons of the lower court show that the court considered that the original answer filed had put at issue plaintiff's right to recover and had denied her right to recover in such a way that it could not be said that plaintiff's right to the proceeds of the policy sued on had been admitted by the answer. The ruling appears to us to be correct. The court did not expressly act on some of the matters urged in the motion, and we cannot in reviewing the ruling, act on any matter which was not acted on by the lower court. But the lower court in acting on the merits did in effect consider and act on all the questions urged by plaintiff in her motion for judgment on the face of the papers. Consequently when we come to act on the merits we will also review all questions acted on by the court, so that every question in the case will be reviewed.

Plaintiff's original petition is made up of 6 articles. The sixth and last is an averment that plaintiff had made amicable demand for settlement and that payment had been refused. But in defendant's original answer, it alleged that plaintiff is not a beneficiary; that George Washington had changed from her to Betty Ross. Plaintiff contends that the document on which defendant acted in making the change is not an affidavit. Plaintiff's position on this subject appears to be untenable. Defendant declares in this document that the original policy had been lost or mislaid, and prayed that the beneficiary be changed from Emma Anderson Washington, his wife, to Betty Ross, his mother. Plaintiff's contention is made untenable by her amended and supplemental petition in which she expressly alleges that such a change was actually made. Her averment on the subject is as follows:

"Petitioner alleges in the alternative that she has been reliably informed therefore believes and avers that George Washington, the insured, changed the designation of his beneficiary on May 31, 1929, from petitioner to one Betty Ross, his alleged mother."

This judicial averment does away with her argument that the document which she attacks was not an affidavit. The change is declared to have been accomplished and there is nothing more to be said.

Plaintiff urges the averment in defendant's original answer, "Article 6 is admitted," as entitling her to judgment against defendant as prayed for. The only way

this could be done would be to deny and refuse effect to defendant's averments in articles 2, 3, and 5 of its answer and give effect only to that part saying, "Article 6 is admitted."

■ The answer evidently had in mind only the original petition. We say this because the answer makes no reference to the amended and supplemental petition according to which the answer is made contradictory and inconsistent. The matter should have been better explained in answering the rule, but the answer, taken as a whole, makes it plain that defendant did not intend to admit its liability as claimed by the plaintiff, and no such admission can be justly thereto imputed.

Defendant was permitted to file an amended and supplemental answer, the purpose of which appears to have been to offer an explanation which should have been offered in answering the rule. But be that as it may, the ruling of the court overruling plaintiff's motion for judgment on the face of the papers was correct.

■ Plaintiff contends that in defendant's answer she is referred to as "Emma Anderson." The document called by defendant an "affidavit" and which plaintiff says is not such, referred to in the answer, shows that the plaintiff is named "Emma Anderson Washington." Not only that, but plaintiff in her motion for judgment on the face of the papers refers to herself as "Mrs. E. A. Washington." The matter appears to us to be unimportant and as not justifying any conclusion favorable to the plaintiff. Plaintiff makes the further contention that Betty Ross was not dependent on George Washington for support and had not been married to his father. The only testimony on this subject is that of herself and Mary Mitchel, her daughter by a former marriage. The lower court considered their evidence on this subject insufficient. Plaintiff's testimony shows that she was confined to her bed by sickness and was advised by her physician that she would never recover her health. That she had been confined to her bed (meaning at the time of taking her testimony) for about four years. As her testimony was taken on November 4, 1934, it seems to be a proper conclusion that her confinement by sickness commenced during the year 1930. The record shows that she was married to George Washington on September 12, 1922, and she says that he left her, after living with her about two years. This shows that

he left her during September, 1924. Her testimony is to the effect that after he left her she never saw him again. She continued to live at Patterson, which is in the parish of St. Mary, while he went to live with his mother at White Castle, which is in the parish of Iberville. The evidence does not show that she depended on him for support when he left her, other than the legal provision, according to which wives are dependent on their husbands. We say this because she testifies that her husband was sick when he left her and she wanted him to stay so she could take care of him, but he left her and went to live with his mother. That her husband told her while living with her that his mother was not dependent on him for support. As his mother lived at White Castle and the plaintiff at Patterson, it is not clear from her testimony that she had any personal knowledge of the matter. Then, again, this repetition of the statement of a dead person is accounted the weakest kind of testimony and requires corroboration. She testifies that during the time her husband lived with her he did not contribute anything to his mother's support, but under the circumstances the plaintiff could be easily mistaken about that. She testifies that George Washington was sick with asthma and Bright's disease when he left her and that he could not have supported his mother on that account, but if he was unable to support his mother, he was likewise unable to support his wife. She further testified that her husband told her that his father and mother had not been married; that he did not know who his father was.

■ Mary Mitchel corroborates her mother, saying that George Washington made statements to her to that effect. But the testimony of her daughter as to what George Washington told her is as weak as that of her mother and is not convincing. The lower court did not attach credit to the statements of plaintiff and her daughter on this subject. The reasons handed down for judgment show that he did not consider plaintiff, by her testimony and that of her daughter, had overcome the presumption of the policy, regarding the dependency on the part of Betty Ross on George Washington at the time she was made his beneficiary and at the time of his death, and that George Washington was in birth legitimate. The presumption is that the beneficiary named in the policy is entitled to recover when the right is questioned on grounds of the kind

mentioned. The lower court cited, in support of the position taken, Smith v. Grand United Order of Odd Fellows of La., District Grand Lodge No. 21, 17 La.App. 532, 136 So. 124; Sumner v. Grand Lodge, K. P. of La. (La.App.) 147 So. 747; Bonnette v. Bonnette (La.App.) 161 So. 616.

The cases cited are supporting, and we accept them as grounds for our own position.

Our appreciation of the evidence is that the lower court did not err in deciding the case in favor of the defendant.

The judgment appealed from is correct. Judgment affirmed.