## AUSTIN v. METROPOLITAN LIFE INS. CO.
### No. 4309.

Court of Appeal of Louisiana, Second Circuit, Second Division.
June 11, 1932.

John G. Gibbs, of Shreveport, for appellant.

Jackson & Smith, of Shreveport, for appellee.

### CULPEPPER, J.

The defendant insurance company issued a group life insurance policy to the W. K. Henderson Iron Works & Supply Company, of Shreveport, upon the latter company's employees of date June 15, 1920, among whom was Will Austin, husband of the plaintiff, Beulah Austin. The policy was issued upon the application of the employer company, of its own volition, the premiums on which were to be, and were in fact, kept paid up by the employer. Under the terms of the policy, each employee was insured for $500, this amount to be increased $100 each year of continuous employment up to the eleventh year, or to a maximum of $1,500.

Certificates were issued to each of the employees showing that they were insured under and subject to the terms and conditions of the policy. In the certificate issued to Will Austin, his wife, plaintiff herein, was named as his beneficiary. The certificate contains no requirement that its holder shall pay any premiums whatsoever, but it states that the entire cost of the insurance should be borne by the employer company.

The policy provides that the premiums are to be paid monthly by the employer, and provides: "The payment of any premium shall not maintain the insurance under this policy in force beyond the date when the next premium becomes payable," except that "a grace of thirty-one days shall be granted to the Employer for the payment of every premium after the first. * * *" It was term insurance. It provides for the issuance by the insurance company to the employer for delivery to each employee a certificate, as above stated, showing the insurance protection to which such employee is entitled. It further provides: "The policy, as herein defined, the application of the Employer, and the individual applications, if any, of the Employees, copies of which are hereto attached, constitute the entire contract between the parties, and except for non-payment of premiums, shall be incontestable as to insurance in force at the date hereof after one year from the date of issue of this original contract. * * *" And: "This Policy is a participating contract and the company will annually ascertain and apportion any divisible surplus accruing hereon. Any such divisible surplus shall be paid in cash to the employer."

It is expressly stated in the policy that: "The Employer may, on due notice to the Company at each succeeding anniversary hereof, renew this Policy for the term of one year, conditioned upon the payment of the monthly premiums. * * *"

On December 18, 1929, the employer company wrote the insurance company directing that the policy be canceled, effective December 31, 1929. The insurance company replied, urging that the policy be kept in force, and the employer company again wrote the insurance company on January 6, 1930, advising that it had been carrying this insurance for a long while gratis to its employees, and, owing to the company's being in the hands of a receiver, it did not feel justifiable in continuing the insurance due to the expense; and directed the policy canceled as of the date originally requested. Accordingly the policy was canceled, and the employer so notified. Notices of this cancellation were posted for information of the employees at various conspicuous places in the employer's place of business in Shreveport. Will Austin was still an employee at the time and continued as such up to the 10th of February, 1930, on which date he died. His widow, who was named as his beneficiary in the certificate issued to him, brought this action against the insurance company to collect $1,500, to which she alleges she is entitled by reason of said certificate, which she held at the time.

There was judgment rejecting her demands, and she appealed.

It is contended by plaintiff's counsel in oral argument and in brief filed that the certificate issued by defendant and delivered to plaintiff's husband should be construed as a contract of insurance by and between defendant and plaintiff's said husband, independent of the "parent" policy issued to the employer company, and should be enforced as such regardless of said policy; that said policy cannot be read into the certificate so as to form a part of it, for the reason that, under Act No. 227 of 1916, it is specially enacted that a life insurance policy must contain the entire contract between the parties, and nothing shall be incorporated therein by reference.

■ Counsel, we think, is in error in taking the position that the certificate issued to plaintiff's husband constituted a policy under the meaning and intendment of the act. The policy issued to the employer company was, we think, such an instrument as was contemplated under the statute. The statute plainly says every "policy of insurance" shall contain the entire contract, and no statement or statements not indorsed upon or attached to the policy when issued shall be used in defense of a claim under the "policy," unless contained in a "written application." The language of the statute clearly indicates that the kind of policy contract contemplated is one which has been applied for by the insured. Plaintiff's husband made no application for insurance, signed no contract, obligated himself to pay no premiums, and in fact did nothing except to accept the certificate wherein it informed him that he was being provided by his employer with a certain amount of group insurance, free of cost or charge to him, in an employer's group insurance policy which had been applied for by, and issued to, his employer. It was a free gift made purely out of a feeling of kindness and interest entertained by the employer toward his employees, as is evidenced in the employer's letter accompanying the certificate when delivered.

The policy itself does contain the entire contract between the contracting parties, apparently necessary for a valid and binding contract for the purposes intended by them. It has the employer's application attached setting forth in detail all of the facts as forming the basis for the issuance of the policy, as well as all other essentials apparently necessary under the statute.

Counsel, in support of the position thus taken by him, cites Whitmeyer v. Liberty Industrial Life Ins. Co., 166 La. 328, 117 So. 268. We do not think that case is decisive of the present one. In that case the contest was between the beneficiary and insurer over the terms of the policy itself, which had been applied for by the insured of whom plaintiff was the beneficiary, and not where a claim was made under a certificate issued to some other party under the terms of the policy itself and who had nothing to do with applying for the policy. In fact, in the cited case the plaintiff, beneficiary, himself made the application for the insurance upon the life of his uncle, the insured. It was claimed by defendant that plaintiff had made a false statement of his uncle's age. The application, in which the statement was alleged to have been made, had apparently been lost and could not be produced. The court very correctly refused to consider oral testimony as to the statement, citing the Act No. 227 of 1916 as the law on the subject.

Counsel cites other decisions, none of which appear applicable in this case. Neither counsel has cited any decisions of this state upon the precise point raised in this case, and we have been unable to find any.

Defense counsel has cited a number of decisions from other states, which appear clear, in point, well reasoned, and, according to our view, correctly set forth the relationship which exists between the insurer, employer, and employee under group insurance policies such as this one.

In Wann v. Metropolitan Life Insurance Co., 41 S.W.(2d) 50, 52, a Texas case, the Supreme Court of that state said: "It appears that the insurance company entered into a

contract with plaintiff in error's employer to insure its employees under terms mutually agreeable to both parties. Under this contract a policy was issued and delivered to the employer containing the terms and conditions under which the insurance was to be effective. The insurance company then issued its certificates to the various employees intended to be covered by the group policy, which evidenced their right to participate in this insurance upon the terms and conditions outlined in said policy. Under such contract the certificate issued to the plaintiff in error did not constitute the complete contract of insurance. It merely evidenced his right to participate in the insurance provided by his employer under the terms and conditions imposed in the group policy when construed in connection with the certificate."

The following decisions are cited in point: Thull v. Equitable Life Association (1931) 40 Ohio App. 486, 178 N. E. 850; Provident Life & Accident Ins. Co. v. Nicholson (Va. 1931) 160 S. E. 5; Seavers v. Metropolitan Life Ins. Co. (1928) 132 Misc. Rep. 719, 230 N. Y. S. 366, 367; Provident Life & Accident Ins. Co. v. Matlock (1926) 3 Tenn. App. 432.

Plaintiff cited a number of Louisiana decisions in support of the contention that no other person than the insured or beneficiary in the policy can assign or dispose of it, contending that such an assignment or surrender in no wise affects the interest of those not concurring.

In the cited case of Pilcher v. New York Life Ins. Co., 33 La. Ann. 322, no such conditions or relationships existed between the plaintiff and defendant as exist in the present case. In that case plaintiff's husband took insurance on his own life with his wife as beneficiary. It is not shown whether the policy contained a clause permitting him to change the beneficiary. After carrying the policy for some seventeen years he pretended to let the policy lapse and had another one issued in its stead, substituting his heirs and assigns as beneficiaries in place of his wife. He then pledged the newly issued policy for a community debt. The court held that under the circumstances the new policy was a continuation of the old; that the husband's acts were in fraud of his wife's rights, it all having been done without her knowledge or consent, that the company had joined and become a party to his act; that the insurance belonged to the wife from its inception and could not be used in payment of community debts. We have no such state of facts in the present case; neither is the principle of law there involved present in the case now before the court.

Defendant in the present case made no effort and did nothing to go beyond the legal rights of this plaintiff, nor did the Henderson Company do so. The policy was canceled in so far as this defendant is concerned,

solely by reason of the fact that the employer, whose duty it was to pay the premiums, failed to do so, and requested its cancellation.

In Davis v. Metropolitan Life Insurance Co., 161 Tenn. 655, 32 S.W.(2d) 1034, 1035, which was a case practically on all fours with the present case, the Supreme Court of Tennessee used the following language:

"The specific question of the power of an employer to cancel a policy of group insurance has been dealt with in several reported cases cited on the brief. Stoner v. Equitable Life Ass'n Society, 28 Dauph. Co. Rep. (Pa.) 235; Thompson v. Pacific Mills (1927) 141 S. C. 303, 139 S. E. 619, 620, 55 A. L. R. 1237.

"In the last-cited case the Supreme Court of South Carolina quite clearly recognized the employer and the company as the 'original contracting parties' with the right in these two parties, by mutual agreement, to extend or terminate the contract, or enter into an altogether new contract, holding that their action would be binding upon the employees for whose benefit the group policy was procured.

"In the Stoner Case, supra, it was said:

" 'It is argued by the plaintiff that this policy could not have been cancelled or terminated without notice to the insured. To that contention we cannot assent. The insured was not a party to this contract. The beneficiary had no such vested interest in it as in an ordinary life policy, where the beneficiary is named, and no right to change has been reserved. In this policy contract a specific right to change the beneficiary was reserved. There was no overpayment of premiums by the insured as in any ordinary life insurance policy. It carried no such surrender value. The employer had reserved the right to terminate the insurance. There is, therefore, no comparison between this contract and one which cannot be terminated without notice to the insured. This insurance was presented by the company to Stoner and its other employees, as it indicated in the letter transmitting the certificate, to emphasize "the spirit of mutual helpfulness and good will." * * * When the company notified the defendant Society to cancel or terminate the insurance and the defendant Society entered such termination upon its records * * *, it effectively wiped out this contract, and the rights of * * * Stoner under it.' "

The court further stated: "No question of agency arises. The city [employer] and the company are the original parties. It is the employer, here the city, which promised to pay the premiums, collecting in turn a pro rata from its several employees. No individual employee could have asserted a right to continue the policy independent of the employer. It follows that he could not have resisted a cancellation of the group policy by

agreement between the employer and the company."

■ The facts in the above case completely cover those in the case now before us. The insurance company, not only had the right by reason of nonpayment of premiums to cancel the policy, but the employer company had the right of its own volition to order it canceled and terminated, the effect of which was to thereby put an end to any further rights in the employee or his beneficiary under the certificate.

The difference, as we view the law, between a life insurance policy stipulating the right of the insured to change the beneficiary and one containing no such stipulation, is that in the latter the beneficiary has a vested right in the policy in its beginning, whereas in the former no such right is acquired until the death of the insured. Vance on Insurance (2d Ed.) 610. Therefore, plaintiff had no vested right even under the certificate, for the reason that in it there is reserved the right to change the beneficiary. This observation is made, not that we consider it of prime importance to a decision in this case, but because plaintiff has urged as a reason for recovery that she was the beneficiary. Neither did her husband have at the time of the cancellation of the policy any right therein which could prevent its cancellation in the manner and for the reason that it was done, even though done without his consent. He had never paid any premiums, nor did the policy have any cash surrender value. Although it was not shown that any divisible surplus had accrued under the policy, if there had been, the policy specially provided that it should be paid to the employer.

For these reasons we think the judgment of the lower court is correct, and it is affirmed.