## METROPOLITAN LIFE INS. CO. v. LEWIS. et al. *

### No. 4344.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1932.

Robert L. Garrett, of Shreveport, for appellants.

Jackson & Smith, of Shreveport, for plaintiff.

Reynolds, Hamiter & Hendrick, of Shreveport, for appellee.

DREW, J.

The Metropolitan Life Insurance Company, under provision of Act No. 123 of 1922, deposited in court $2,000, the proceeds of insurance on the life of Granville Lewis, whose correct name is admitted to be Granville Lewis Days, a negro employee of the Kansas City Southern Railway Company, who died June 28, 1931. The defendants are Emma Lewis Days, widow and original beneficiary, and Nora Lee Days and Lula Samuels, aunts of the insured, whom he attempted to make beneficiaries in place of his wife, Emma Lewis Days, just prior to his death. The question before the court is the legality of the attempted change.

The lower court held that the attempted change of beneficiary did not have the effect of a change of beneficiary, and that the beneficiary, Emma Lewis Days, was the legal beneficiary and entitled to the fund deposited in court, less the costs of court.

Over the material facts necessary to a decision in the case, there is little or no dispute. There is much dispute over other facts which we consider unnecessary and irrelevant to the issues. The relevant facts are correctly stated by the lower court in a well-prepared opinion, and are, in substance, as follows:

The policies in the case represent group insurance taken out through deceased's employer, Kansas City Southern Railway Company; the premiums being paid by pay roll deductions. On June 8, 1931, the insured went to the office of the railway company with the purpose of changing the beneficiary under the policies. He executed two instruments, one a request for the issuance of new certificates, in which the averment that the original had been lost or mislaid is lined out, the other a change of beneficiary in the regular form, from Emma Lewis Days to Nora Lee Days and Lula Samuels. Two or three hours afterwards Emma Lewis Days appeared at the railway office and requested that the agent hold up sending in the application for change until she could see her husband. The applications were accordingly held up for two days, then forwarded to the superintendent of the railway company in Kansas City, on June 10.

At the time of the attempted change of beneficiaries the original certificates on the policies were in the possession of Emma Lewis Days, in which she was named beneficiary. The request for change of beneficiary was not received at the home office of the insurer until June 29, 1931, one day after the death

*Rehearing denied July 14, 1932.

of the insured. The applications were in proper form, and the change of beneficiary was indorsed on the records of the insurance company. The only remaining formality was the indorsement of the change of beneficiary on the certificates, which could not be accomplished, because insured stated that they were not in his possession. The company waived this indorsement and accepted the change of beneficiary on June 29, 1931. Emma Lewis Days was not notified of the action by the company.

In the letter from the railway company to the insurance company transmitting the request for change of beneficiary is a statement that the original certificates were not lost, but were in the possession of the wife, who was opposing the change. The company therefore had full notice of the facts at the time the change was accepted by it. No duplicate certificates were issued. The application for change of beneficiary and for new certificates was mailed by the Shreveport office of the railway company on June 10, 1931, and received by the officer in charge of group insurance of the railway company at Kansas City on June 11, 1931, where it remained until June 24 or 25, during which time the railway company was making an investigation, possibly due to the fact that the certificates did not accompany the application, or that in the application for new certificates the averment that the original certificate had been lost or mislaid was lined out. Having become satisfied with the investigation that the appellee had the certificates and would not surrender them, it forwarded the application to the insurer, where they arrived the day after the death of the insured.

The sole and only question for decision is: Did the insured, in filling out and executing the necessary documents, one of which was an application for issuance of duplicate certificates, and the other a request for a change of beneficiary from Emma Lewis Days to Nora Lee Days and Lula Samuels in the form required by the insurer, which were mailed by insured's agent to the insurer prior to his death, but were not received by the insurer until after insured's death, constitute a change of beneficiary?

■ The group insurance policy, in which the insurer bound itself to pay the beneficiary, on death of the insured, contains the following clause: "*Change of Beneficiary*—Any employee, while insured hereunder, may from time to time change the beneficiary by filing a written notice thereof at the Home Office of the Company, accompanied by the certificate indicating the insurance hereunder on such employee. Such change shall take effect upon endorsement thereof by the Company on such certificate, and not before."

The certificates issued to the insured under the group policy read in the beginning as

follows: "This is to certify that under and subject to the terms and conditions of the group policy No. 1856G, Granville Lewis, an employee of the Kansas City Southern Railway Company, is hereby insured. * * *"

After providing for payment to the beneficiary if death occurs, and naming her, the following clause appears: "The right to change the beneficiary is reserved."

The group policy is the contract which controls as to the manner of changing the beneficiary. The certificate is for the purpose of indicating that this particular employee is covered by the group policy and to name the beneficiary thereunder.

The insurer is not interested in the outcome of this litigation. It has deposited the face value of the policy in the court, and called upon the different litigants to prove their respective claims. Nora Lee Days and Lula Samuels contend that the insured had done all within his power to perfect the change of beneficiary from his wife, Emma Lewis Days, to them, that the only remaining act to accomplish this change was a purely ministerial act by the insurer, and that the court should give effect to the intention of the insured by holding that the change of beneficiary has been accomplished where the insured had done all he could to accomplish the change. They cite in support of this contention 37 Corpus Juris, 584 and 585, § 350; 14 R. C. L. § 556; Joyce on Insurance, vol. 2, p. 1709, § 751; Kimbal v. National Life & Acc. Ins. Co., 8 La. App. 228; McDonald v. McDonald, 212 Ala. 137, 102 So. 38, 36 A. L. R. 761; Chatham Phenix Nat. Bank & Trust Co. v. Travelers' Ins. Co. 232 App. Div. 598; 251 N. Y. S. 43; Rothstone v. Norton, 256 N. Y. 601, 177 N. E. 157; and numerous other cases from other jurisdictions.

In Kimbal v. National Life & Accident Insurance Company, decided by the Orleans Court of Appeal, the provision of the policy in regard to change of beneficiary was not proven, and for that reason the court held that the decision in New York Life Ins. Co. v. Murtagh, 137 La. 760, 69 So. 165, was not applicable. For the same reason the decision in the Kimbal Case is not applicable here, as the provision of the policy in this case regarding change of beneficiary is proved and is the same as was in the Murtagh Case. There are further distinctions made in the Kimbal Case which are unnecessary to discuss here.

■ Appellants rely to some extent on the case of Causey v. State Life Ins. Co., 17 La. App. 545, 135 So. 747, decided by this court. The case in many respects is not parallel to the case before us now. This court held in the Causey Case that the provision in the policy that the change of beneficiary was not effective until the change was indorsed on the policy was for the benefit of the insurer, and could be waived by the insurer. The change

of beneficiary in that case was made and indorsed on the application prior to the death of the insured, and this court held the acts of the insurer constituted a waiver. In the case at bar the application did not reach the office of the insurer until after the death of the insured. The insurer did not have any knowledge of the intention of the insured to change the beneficiary until after the death of the insured, and after the originally named beneficiary's rights in said policy had become vested. The original beneficiary had no vested rights in the policy until the death of the insured, but certainly at that time her rights became vested rights. The rights of the beneficiary were fixed at the death of the insured, and could not be affected by any subsequent acts of the insurance company. New York Life Ins. Co. v. Murtagh, cited supra. The provision of the policy fixing the manner in which the beneficiary could be changed could have been waived by the insurer before the death of the insured, but not after his death. The weight of authority in this state and in other jurisdictions is that the provisions of the policy regarding change of beneficiary are a part of the contract and binding upon insured and insurer, and that the insurer has a legal right to have proof of the inability of the insured to deliver the policy for the purpose of indorsement of change of beneficiary if it so desires before agreeing to the change of beneficiary. It likewise has the right to waive the delivery of the policy for the indorsement. In this case the insurer did not insist on the certificates being produced, for the reason it had information that the certificates, which in this case took the place of the policy, were in the possession of the originally named beneficiary who, they assumed, would not surrender the certificates. The waiver was, however, made after the death of the insured and after the rights of the original beneficiary had become vested. The acts of the insurer in this case were not simply ministerial, but were acts, the performance of which were in its discretion. It could have demanded proof of the insured's inability to produce the certificates before making the waiver.

There is a wide distinction between the case at bar and one where the policy reserves the right to the insured to change the beneficiary without specifically defining how that change may be made. The rule in this state, and we think the weight of authority in all other jurisdictions, is that, where the policy specifically sets out how the change of beneficiary may be made, no legal effect can be given to the intended change unless the intent of the policy as set out therein shall be complied with, or waived, by insurer, prior to the death of the insured, by express waiver or by acts amounting to waiver. This ruling is not in conflict with the decision relied upon by appellants, viz. McDonald v. McDonald, cited supra. Appellants further contend that appellee, by her acts, prevented the application for change from reaching the home office of the insurer prior to the death of her husband, and that because of her acts she is estopped to claim the funds as beneficiary under the policy.

The appellee, upon learning of the insured's intention to apply for a change of beneficiary, visited the office of the Kansas City Southern Railway Company and conversed with the employee of said railway company who had charge of such matters. She requested that he not send in the application for a few days until she could see and talk with her husband, which request was granted. The application was held from June 8 to June 10, when it was forwarded to the Kansas City Southern Railway Company's head office in Kansas City, where it remained until June 24 or 25th, at which time it was forwarded to the insurer. We find nothing unusual in the request of the appellant. There was no fraud perpetrated by her. She was the legal wife of the insured, and the funds used to pay the premiums on the policy were community funds. She knew her husband's condition and that his term of life was short, and it was natural that she did not wish to be displaced as beneficiary. We have been cited to no authority that would justify us in holding that her acts have estopped her from claiming the proceeds of the insurance policy as beneficiary, and we have found none.

The lower court found that the charge that appellee stole the certificates from her husband was not proved. We agree with his finding on this fact. Appellee complains of the judgment of the lower court in that it fixed the costs to be paid out of the fund deposited in court by the insurer. During the trial of the case it was agreed that the costs accruing would be paid out of the funds in court. We think the agreement was sufficient to justify the lower court in ordering the entire costs to be paid from the fund, and we will not disturb that part of the judgment. The appellee also prays for damages for frivolous appeal. There is no merit in this prayer.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs.