240

indicated a purpose to authorize the issuance of a proclamation in any case in which the conditions of domestic violence are perhaps promoted, etc., that is, upon a state of facts that might fall somewhat short of certainty.

In all material aspects, the 1922 resolution does not differ from that upon which the Chavez Case was decided.

The third contention, concerning the conduct of foreign affairs, seeks to introduce an element which is not necessarily involved in this case. However labor-saving the device may be, of writing a criminal law into a Joint Resolution which deals primarily with matters of international relations, it is thought that the two subjects may not lend themselves conveniently to statutory amalgamation.

If an amendment to the Criminal Code had been adopted by Congress, to prohibit the making of contracts to sell arms and munitions in the United States, and it had contained a clause reading: "If the President shall find that this law will result in bringing about what Congress declares to be its purpose and shall so declare, then this law shall take effect on the date of his proclamation," probably the delegation of the power to perform an essentially legislative function would be so clear that there would be little room for dispute as to its presence.

It is not thought that a different situation is presented because the instant penal provision appears as part of a Joint Resolution the major aspect of which may pertain to international affairs. If penalties of a criminal nature must be imbedded in such legislation in the interest of efficacy, care should be exercised to preserve constitutional amenities during the process of formulation.

The court has not been unmindful of the presumption of validity or constitutionality which attaches to all national legislation; it has not intended to do violence to the traditional practice of Congress in reposing the widest discretion in the Executive Department of the government in the conduct of the delicate and nicely poised issues of international relations; it has merely been required to decide the issues raised by this demurrer, as a matter of everyday duty.

Settle order in accordance with the original opinion.

MoBRIDE v. CONNECTICUT GENERAL LIFE INS. CO.

HALL v. SAME.

JONES v. SAME.
Nos. 2594, 2596, 2597.

District Court, W. D. Louisiana, Shreveport Division.

Dec. 3, 1935.

J. B. Crow and O. W. Bullock, both of Shreveport, La., for plaintiffs.

E. W. & P. N. Browne, of Shreveport, La., for defendant.

DAWKINS, District Judge.

In each of the above suits plaintiffs sue upon a policy of group insurance, alleging that the same was issued to the "Gulf Oil Corporation of Pennsylvania, and its subsidiary companies, which said policy was delivered to the said Gulf Oil Corporation of Pennsylvania and its subsidiaries." In addition to claiming the face amounts of the certificates issued to the plaintiffs, they demand certain penalties under Act No. 310 of the Louisiana Legislature of 1910, including "double the amount due under the terms of said policy and said certificate, together with reasonable attorneys' fees, to be determined by the court."

Defendant has moved to strike out the demands for penalties on the ground that there is nothing in the petition to show that the master policy was a Louisiana contract or was made to have effect in this state. Plaintiffs allege that the said policy is in the hands of the Gulf Oil Corporation of Pennsylvania or its sub-

sidiaries; that they were and are employees of the Gulf Refining Company of Louisiana, a Louisiana corporation, subsidiary, but nowhere does it appear in the petition that the policy contract was made in Louisiana, or to have effect here, in so far as its provisions between the contracting parties, the insured and the insurer, are concerned. The certificates issued to these plaintiffs do not constitute the contracts. Austin v. Metropolitan Life Insurance Co. (La.App.) 142 So. 337. The issuance of a certificate to a citizen of this state did not make the policy a Louisiana contract. Connecticut General Life Insurance Company v. Speer, 185 Ark. 615, 48 S.W.(2d) 553. The Louisiana statute cannot have any extraterritorial effect.

My conclusion is that the petition fails to allege facts which bring the policy under the provisions of the Louisiana law, and the motions to strike should be sustained.

Proper decree should be presented.

### In re ROTHMAN et al. *

District Court, S. D. New York.
March 13, 1936.

Louis Glazer and Harry A. Bloomberg, both of New York City, for bankrupts.

Charles Seligson, of New York City, for Irving Trust Co., trustee in bankruptcy.

PATTERSON, District Judge.

The referee has recommended an allowance of $650 to the bankrupts' attorneys, together with disbursements of $154.-90. The work done by these attorneys included (1) unsuccessful opposition to adjudication of the bankrupts, and (2) obtaining a discharge for the bankrupts over objections interposed by the trustee. The trustee's opposition to discharge, while unsuccessful, was not captious or frivolous. Three-fourths of the services performed by the bankrupts' attorneys were in getting the bankrupts their discharge, that issue having been warmly contested.

The amount recommended for the bankrupts' attorneys is excessive. The referee evidently took into account services performed by these attorneys in resisting adjudication and in obtaining discharge for the bankrupts. Services rendered to the bankrupts in resisting adjudication and in conducting proceedings for discharge are not matters for allowance out of the estate.

*Order affirmed — F.(2d) — .