### WATKINS v. METROPOLITAN LIFE INS. CO.

#### No. 1720.

Court of Appeal of Louisiana. First Circuit.

June 9, 1937.

886

McCoy, King & Jones, of Lake Charles, for appellant.

Jackson & Smith, of Shreveport, and Pujo, Hardin & Porter, of Lake Charles, for appellee.

LEBLANC, Judge.

On May 8, 1923, the Kansas City Southern Railway Company and its affiliates took out a group insurance policy with the Metropolitan Life Insurance Company, the defendant herein, under the terms of which all employees of the insured companies, who were eligible, were covered and insured for amounts from $1,000 to $3,000, as per a classification made according to the annual salary received by each. The employee so insured was given a certificate showing his participation in the group policy and the amount of insurance carried in his case, with the designation of his beneficiary thereunder. In each case, the right to change beneficiary was reserved.

The premiums paid to the insurance company were made up of the combined contributions of the employer and employee. They were paid for one year and the policy was renewable for the period of one year at a time, upon due notice being given to the insurer.

At the time the policy was issued, one Charles Hunter, late a resident of Calcasieu parish, and employed by the Kansas City Southern Railway Company, was eligible for insurance under the group policy and he was issued a certificate in the sum of $1,000, which amount was made payable to Elvine Hunter as his beneficiary in the event of his death during the life of the policy. Later on, under the provisions of the policy, the amount of insurance in his favor was raised to $2,000.

On June 26, 1911, Charles Hunter entered into some real estate transaction with the plaintiff herein, Dr. Thomas H. Watkins, as a result of which he became indebted unto the said plaintiff. Apparently in July, 1930, plaintiff was not satisfied with the manner in which the obligation stood and was evidently attempting to secure it in some way, for on July 19, 1930, he wrote a letter to the defendant insurance company inquiring into the status of Hunter's insurance as carried by them. From his inquiry, there resulted an application for a change of beneficiary from Elvine Hunter to the plaintiff, Dr. Thomas H. Watkins, made by the insured Charles Hunter on November 3, 1930. The certificate was next presented to the insurance company and on November 11, 1930, the change as requested was registered with proper indorsement made on the certificate itself.

On April 29, 1931, Charles Hunter and the plaintiff executed a document in authentic form in which Hunter acknowledged his indebtedness to the plaintiff in the sum of $1,345.67 and declared that he carried insurance under the certificate referred to and that he had named the plaintiff the beneficiary thereunder in place of the originally designated beneficiary, Elvine Hunter. It is therein stipulated that in the event

of the death of the said Charles Hunter, the proceeds from the amount of the insurance carried would be used by the beneficiary in paying off the full amount of indebtedness due him in connection with the real estate transaction between them. All costs incurred in administering the estate of Charles Hunter as well as all payments of taxes and for insurance premiums made by plaintiff were by him to be taken out of the proceeds of the insurance also, with interest at 8 per cent., after all of which, any balance remaining was to be turned over to Elvine Hunter, who was the wife of the insured. Under the terms of the document, the certificate was turned over to the plaintiff to be held by him until repayment of the amount due him in full by Charles Hunter, or in the event of the latter's death to be presented to the insurance company for collection.

On September 30, 1933, by mutual consent of the Kansas City Southern Railway Company and its affiliates, and the Metropolitan Life Insurance Company, the group policy of May 8, 1923, was canceled and a new group policy covering the railway company and other affiliates was taken out on October 1, 1933, effective as of that date, which new policy was from time to time thereafter amended. Under this new group policy, Charles Hunter, who in the meantime had become a retired employee, was, upon his own application, issued a certificate for insurance in the sum of $1,000, in which Eula Hunter, his daughter, was designated as beneficiary. Upon his death on July 10, 1934, and after due proof having been submitted, the insurance company paid to Eula Hunter the amount of $1,000 as provided for under this certificate.

On April 26, 1935, plaintiff instituted this suit against the defendant to recover the full amount of $2,000 as the beneficiary under the original certificate issued to the deceased employee as one of those covered by the original group policy.

In his petition plaintiff sets out the facts as they have been substantially recited herein and alleges that he only became aware of Hunter's death about the middle of October, 1934, and immediately thereafter notified the defendant company and requested blank proofs of death so that he could collect the insurance due under the policy.

He avers that it was in reply to a letter written to the defendant by his attorneys dated October 24, 1934, that he first learned that the deceased had, with the assistance of his employer, attempted to deprive him of his vested interest in the group policy of insurance under which he held the certificate as beneficiary by substituting the new group policy, of which he was unaware, for the one of May 8, 1923. He avers further that the change in beneficiary from himself to Eula Hunter, in the substituted policy, was ineffective for the reason that the change was made without notice and without surrender of the beneficiary certificate as provided for in the certificate itself.

In a supplemental petition plaintiff recites in detail the contents of the authentic document executed by Charles Hunter and himself on July 19, 1930, which he states was an assignment of the policy, and alleges that the original of the said document was forwarded to the Kansas City Southern Railway Company, through some named representative, at the time, with the request that the benefit certificate be reissued to him, as beneficiary, as provided for in the said document.

There was an exception of no cause of action filed on behalf of the defendant which was tried and overruled. Defendant then filed its answer in which its action in connection with the two group policies is set out and in which it denies that the issuance of the second policy was a substitution for the first. It avers that the Kansas City Southern Railway Company had, on September 30, 1933, canceled the first policy being Group Policy No. 1856-G, which had been issued on May 8, 1923, and all insurance under same ceased to exist. That on October 1, 1933, it issued to the said company another group policy being Policy No. 6738-GLHD, and, on application of Charles Hunter, it issued to him certificate, Serial No. 3020 for $1,000 insurance, and designated Eula Hunter as beneficiary thereunder. It avers that the new policy issued on October 1, 1933, was a separate and distinct contract from the policy issued on May 8, 1923, the contracts being different as to terms and conditions and providing for different kinds of insurance. It avers further that the group policy issued May 8, 1923, being term insurance, the insured had a right to cancel same at any time it desired and that the consent of any beneficiary named by any of the employees was not necessary, nor was any notice required. It denies that plaintiff had acquired any vested right under the policy as in the benefit certificate itself, the right

to change beneficiary at any time was expressly reserved.

The case was submitted on an agreed statement embodying substantially all the facts which have been recited herein. The judgment of the lower court rejected plaintiff's demand and dismissed his suit at his costs, whereupon he took this appeal.

No mention is made on appeal about the ruling of the lower court on the exception of no cause of action and we take it that the exception has passed out of consideration.

It appears to be rather well·settled in the jurisprudence throughout the country that in a policy of group insurance, the contract is one between the insurance company and the employer, and that the insured employee is only incidentally a party thereto. Especially is this so in cases where the premium is paid entirely by the employer, who then is at liberty to cancel the policy of his own volition and thereby terminate the rights of the employee or his beneficiary under the certificate which he holds. Austin v. Metropolitan Life Insurance Co., 142 So. 337, is a decision of one of our appellate courts in Louisiana which holds to that effect. Whether in cases where the employees contribute from his wages toward payment of the premium, as in the present instance, he has any greater rights, is a question which does not seem to have been presented to any of our courts yet. In other jurisdictions, it has been held that he is entitled to notice of cancellation. This is indicated in the following cases noted in A.L.R. annotations, 85 A.L.R. 1470, and 105 A.L.R. 430; Ætna Life Insurance Co. v. Gullett, 253 Ky. 544, 69 S.W.(2d) 1068; Butler v. Equitable Life Assurance Society (Mo.App.) 93 S.W.(2d) 1019; Deese v. Travellers' Ins. Co., 204 N.C. 214, 167 S.E. 797.

But even though notice were a requirement before the insured employee or his beneficiary could be defeated in his rights under his certificate, the question is unimportant in the present case, as the insured employee Charles Hunter evidently had notice since he applied for insurance under the new group policy dated October 1, 1933, and was issued and accepted a new certificate thereunder in which, in accordance with his application, Eula Hunter was designated as the beneficiary.

Plaintiff contends, however, that the new policy issued on October 1, 1933, was not a new policy, but merely a substitution of one policy for another which could not have the effect of defeating the rights of the beneficiary under the original policy. In order to maintain his contention, plaintiff would have to show, first, that he had acquired a vested interest in the policy in which he had been made a beneficiary, and in the second place, that the change from one policy to another was in fact a substitution of one policy for another and not a separate and new contract.

Group insurance has been held to be a distinct form of insurance, and different in most of its aspects from ordinary life insurance, in certain forms of which the beneficiary may acquire a vested interest. In its nature it is similar, if not identical with that form of insurance known as "term insurance." In fact, in the case of Austin v. Metropolitan Life Ins. Co., supra, the court, in construing a policy similar to the one involved in this case, said that "it was term insurance." The policy provides that payments of premiums shall be made on or before their due dates and that "the payment of any premium shall not maintain the insurance under this policy in force beyond the date when the next premium becomes payable except as provided in the next paragraph." The exception is that the employer is granted a grace of thirty-one days for the payment of every premium after the first. In another section of the policy it is provided that "the employer may, on due notice to the company at each succeeding anniversary thereof, renew this policy for the term of one year. * * *" In addition to this, as pointed out in a case cited in the Austin Case, supra, there is no overpayment of premiums, and the policy carries no surrender value. And above all, in the certificate which the insured employee holds under the contract, the right to change beneficiary is specifically reserved. There are at least two cases in Louisiana in which it has been definitely held that no vested right or interest attaches to the beneficiary in a policy of insurance in which the right to change beneficiary has been reserved by the insured. Toussant v. National Life & Accident Co., 147 La. 977, 86 So. 415, and Pollock v. Pollock, 164 La. 1077, 115 So. 275.

But plaintiff's counsel contend that those cases are not authority for the present. They urge that in the first, the change of beneficiary could, under the provisions of the policy, be affected by the mere consent of the insurance company, whereas under the policy before us, it was necessary, in

order for the change to be effective, that the benefit certificate be surrendered and the change indorsed thereon by the company, which, of course, was not done. In the second case, they urge that the policy contained the very same requirement regarding the change of beneficiary as does the one involved in this case, but that the important difference is that it was presented to the company and the proper indorsement was made thereon. There would be merit in their contention had the change of beneficiary made by the insured been in the same policy, or had the new policy under which a new beneficiary was designated in the insured's benefit certificate been, as counsel contend, a mere substitution and not a new contract.

In support of this contention, counsel refer especially to two cases decided by our Supreme Court. Pilcher v. New York Life Ins. Co., 33 La.Ann. 322, and Putnam v. New York Life Ins. Co., 42 La.Ann. 739, 7 So. 602, 604. In each case, under the facts presented, the court held that the newly issued policy was but a continuation of the contract which came into existence with the first policy. In the Pilcher Case the court made it appear clearly, from the opinion delivered, that the intention of the insured was to defeat the rights of his wife, who was the beneficiary under the original policy, by merely substituting the new policy with the consent and knowledge of the insurance company, which, it said in passing, occupied, "the same position as if it were a deliberate and intentional wrongdoer." The following statement made on rehearing reflects the finding of the court on the question as to whether there was a new contract issued or a mere substitution which took place: "In our original opinion we have, perhaps, not expressed ourselves with perfect accuracy, where we speak of two policies; *but the whole context of the opinion explains that we considered the policy of 1871 as being strictly a continuation of the original policy.*" (Italics ours.) Equally as positive was the language of the court in the Putnam Case in indicating that the two contracts were one and the same. After referring to certain clauses in the new policy, the opinion states: "By these two clauses the two policies were inseparably bound together, and the latter made to depend upon the former. * * * It is an entire contract, and cannot be divided, for or against itself, but it must be taken in its entirety."

A mere casual examination and comparison of the two policies in the case before us is sufficient to show what a different situation is here presented. It is apparent that the new policy is an entirely separate and distinct contract from the first with new and additional features such as weekly temporary disability benefits, accidental death and dismemberment insurance; a provision for life insurance on an employee who is retired either on the effective date of the new policy or thereafter, and with a new schedule of amounts of life insurance payable, the same being graded on new salary classifications of employees. Besides, it is not even intimated that there was any intention on the part of either the employer or the insurance company to defeat the rights of any of the insured employees or of their beneficiaries under their benefit certificates.

As a final contention, plaintiff urges that by virtue of the notarial document signed by him and Hunter, he held an assignment of the policy in order to secure Hunter's indebtedness to him and that the company had notice thereof and acting upon the same had changed the benefit certificate, making him the beneficiary thereunder. Again we say that there would be merit in this contention were the document referred to in reality an assignment, and were it a proven fact, as alleged in plaintiff's petition, that the defendant company had notice of the same. Unfortunately for the plaintiff, however, the document, as we read its contents, is not an assignment of the policy, but merely an acknowledgment of indebtedness with authority therein given to the plaintiff to collect the insurance payable under the policy and to distribute the proceeds in accordance with the terms of the document itself. Moreover, even though it be considered as an assignment, it could not be held effective as against the defendant because the record is barren of any proof that the latter had any knowledge or notice of it or even of the fact that the deceased, insured employee, was indebted in any way unto the plaintiff.

The district judge properly disposed of all the issues involved in the case, and for the reasons herein stated, the judgment appealed from is affirmed.