## METROPOLITAN LIFE INS. CO. v. ANDERSON et al.

Civ. A. No. 2952.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 18, 1951.

Phelps, Dunbar, Marks & Claverie, Ashton Phelps, New Orleans, La., for plaintiff.

Lemle & Kelleher, Carl J. Schumacher, Jr., Charles Kohlmeyer, Jr., New Orleans, La., for Mrs. Hettie L. Smith and others.

Adams & Reese, St. Clair Adams, Jr., New Orleans, La., for Mrs. Anderson.

WRIGHT, District Judge.

This is an interpleader action in which the Metropolitan Life Insurance Company asks this court to determine the rightful recipient of the proceeds of life insurance issued on the life of Harry T. Anderson, Jr. The facts of the case reveal a tragic and lingering death from cancer followed by a contest for the proceeds of the insurance between the wife of the deceased on the one hand and his mother and his son by a former marriage on the other.

The Metropolitan Life Insurance Company issued to Ebasco Services Incorporated and Associated Companies a group life insurance policy under which the employees of Ebasco and its subsidiaries could, by the payment of the required premiums, obtain life insurance. On October 4, 1946, Anderson, an employee of the New Orleans Public Service, Inc., a subsidiary of Ebasco, obtained life insurance under this policy through the issuance of a certificate of insurance in the amount of $7,000. The Metropolitan Life Insurance Company issued and delivered the group policy to Ebasco in New York, whereas the certificate of insurance was delivered to Anderson in New Orleans. The insurance was in full force and effect on the date of the death of Anderson on August 22, 1950

and the proceeds have been deposited in the registry of this court by the plaintiff. The issue in this case revolves around the execution of a change of beneficiary form by Anderson pursuant to the change of beneficiary provision of the policy.[1]

The position of Mrs. Emelda K. Anderson, the deceased's wife and the named beneficiary of her husband's insurance, is that the change of beneficiary form executed by Anderson five days before his death, naming beneficiaries as follows: John Robert Anderson $5,000, Mrs. Hettie L. Smith $1,999, Mrs. Emelda K. Anderson $1, is ineffective, null and void for two reasons: first, the change of beneficiary was not endorsed on the certificate of insurance as required by the group policy, and second, at the time the deceased is alleged to have signed the change of beneficiary form he was without mental capacity. The claimants under the change of beneficiary, Mrs. Hettie Smith, the deceased's mother, and John Robert Anderson, the deceased's son, assert that in the circumstances of this case under the law of New York where the policy of insurance was issued and delivered it is not necessary that the change of beneficiary be endorsed on the certificate of insurance, and secondly, at the time he executed the change of beneficiary form the mental capacity of the deceased was unimpaired.

The deceased Anderson had been married twice. He separated from his first wife before the birth of his only child and had seen the child on two occasions during his lifetime. The child was and is being reared by a maternal aunt in Woodville, Mississippi. Anderson married his second wife, Mrs. Emelda K. Anderson, on February 3, 1944, and the evidence shows them to have been a happily married couple to the day of his death. Anderson became ill in the fall of 1949. After an operation in September of that year it was ascertained that he had cancer of the pelvis. He was ad-

mitted to the Veterans' Hospital in New Orleans on January 11, 1950 and remained in that hospital until his death on August 22, 1950, with the exception of a short period from March 30th to April 8th when he was taken home by his wife, Mrs. Emelda K. Anderson, on learning that he was to be placed under restraint in Ward 16, a ward apparently designed for dangerous patients.

During the period of her husband's illness in order to support herself and her husband, Mrs. Anderson worked for the Blind Man's Factory selling and making deliveries of mops and brooms. During this same period Mrs. Anderson remained with her husband constantly when not at work, sitting up in a chair all night each night to attend his needs. During most of the time Mrs. Anderson was away from the hospital, the deceased's mother, Mrs. Hettie Smith, was at the hospital with him. When the serious nature of Anderson's illness was revealed to his wife, she wrote Mrs. Smith who was then living in Jackson, Mississippi, and advised her of her son's condition, whereupon Mrs. Smith came to New Orleans.

Prior to her coming to New Orleans the relationship between the deceased and his mother was apparently unpleasant. Both Mrs. Anderson and the witness Simons, a fellow-employee and friend of the deceased, testified that he had told them that his mother had abandoned him when he was a small child. Mrs. Smith admitted that she had nothing to do with rearing her son. She stated, however, that she did not abandon him, that as a boy she placed him in the hands of the Red Cross in Tennessee, where she had gone to seek work, and had him sent to his grandparents in Mississippi.

On July 14, 1950 Anderson's nine year old son was brought down from Mississippi by his aunt to visit his father at the Veterans' Hospital, this being the second time

1. Change of Beneficiary.—Any Employee insured hereunder may, from time to time, change the Beneficiary by filing written notice thereof with the Employer accompanied by the Certificate and Certificate Riders—if any—evidencing the insurance of such Employee. Such change shall take effect upon endorsement thereof by the Employer on such Certificate and Certificate Riders—if any—and unless such Certificate and Certificate Riders—if any—are so endorsed, the change shall not take effect."

Anderson had seen his son. Anderson gave his son his Masonic Bible and showed him some photographs of himself and Mrs. Anderson. After July 14th Anderson never again saw his son, and it is interesting to note that neither the son nor his aunt who is rearing him appeared at the trial of this case.

After this visit from his son Anderson asked the advice of the witness Simons, who in addition to being his fellow-employee and friend was also one of the trustees of the Employees' Union, concerning the advisability of making his son partial beneficiary of his insurance. Simons told Anderson that it was a matter which he, Anderson, would have to decide for himself. Mrs. Smith, the deceased's mother, testified that Anderson mentioned to her the advisability of changing the beneficiary of his insurance. In view of all the circumstances in the case, however, it is quite likely that Mrs. Smith provoked a discussion of the subject herself in order that she would be included as beneficiary, as will hereinafter appear.

Some time in the early part of August 1950 Mrs. Smith asked the witness Simons to bring a change of beneficiary form to the hospital for Anderson to sign. Simons appeared at the hospital on three occasions with the form but on each of these occasions Anderson's condition was such that he was unable to respond. On August 17th, Mrs. Smith again called Simons and asked him to come out to the hospital with the form. On his arrival he found Anderson in a semi-comatose condition and in spite of the fact that Mrs. Smith propped him up on a pillow in a position so that he could sign his name, Anderson again failed to respond.

The conflicting testimony of the disinterested witness Simons and the interested claimant, Mrs. Smith, relative to this incident is revealing and shows that Mrs. Smith's testimony is unworthy of belief. Simons testified that on this occasion Anderson did not recognize him and did not respond to the repeated urging of Mrs. Smith. Mrs. Smith on the other hand testified that her son instructed Simons to fill out the change of beneficiary form in the manner in which it was filled out, advising Simons that he wanted $5,000 to go to his son, $1,999 to go to his mother and $1 to go to his wife. On being examined as to why Anderson, if he were able to direct Simons as to the details of the distribution of his insurance, did not sign the beneficiary form at this time, Mrs. Smith testified that after giving the directions her son went off to sleep. Simons testified that he did fill out the change of beneficiary form but that he received his directions from Mrs. Smith and not Anderson; that Mrs. Smith told him how the proceeds of the policy would be distributed.

In any event Simons, after completing the change of beneficiary form in the manner above described, gave it to Mrs. Smith before he left the hospital. Several hours later that evening Mrs. Smith called Simons at home and told him that her son had signed the form. She thereupon mailed the form to the office of the New Orleans Public Service where it was received on August 21, 1950, one day before Anderson died. Since the executed change of beneficiary form was not accompanied by the certificate of insurance the executed form was not forwarded to the Metropolitan Life Insurance Company. Immediately after Andersons' death the contest between the claimants herein arose and subsequently the Metropolitian Life Insurance Company filed this interpleader action.

 Prior to the trial on the merits of this case, counsel for Emelda K. Anderson filed a motion for summary judgment on the ground that the change of beneficiary executed by the deceased was null and void for the reason that under the jurisprudence of the State of Louisiana a change of beneficiary which has not been endorsed on the certificate as required by the group policy itself is ineffective. This motion for summary judgment was denied, it appearing that the group policy was issued and delivered in New York and therefore New York rather than Louisiana law governed. Connecticut General Life Insurance Company v. Boseman, 5 Cir., 84 F.2d 701; Connecticut General Life Ins. Co. v. Boseman, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed.

1036; Article 10, Louisiana Civil Code;[2] McBride v. Connecticut General Life Insurance Co., D.C., 14 F.Supp. 240; Metropolitan Life Insurance Co. v. Lewis, La.App., 142 So. 721; Austin v. Metropolitan Life Insurance Co., La.App., 142 So. 337. And under the law of the State of New York a change of beneficiary form is effective and does change the beneficiary even though the change is not endorsed on the certificate of insurance as required by the policy. Greenfield v. Massachusetts Mutual Life Insurance Co., 253 App.Div. 51, 1 N.Y.S.2d 52; Arrington v. Grand Lodge Brotherhood of Railroad Trainmen, 5 Cir., 21 F.2d 914; Equitable Life Assurance Society v. Arnold, D.C., 27 F.Supp. 360; Kelley v. Kelley, Sup., 14 N.Y.S.2d 545, 548; Zukowski v. International Brotherhood, etc., Sup., 23 N.Y.S.2d 871; Mutual Life Insurance Co. v. Gervasini, 178 Misc. 121, 33 N.Y.S.2d 278; In re Robus' Estate, 263 App.Div. 1053, 34 N.Y.S.2d 297; Nye v. Mutual Benefit Life Insurance Co., D.C., 3 F.R.D. 308; Rothstone v. Norton, 231 App.Div. 59, 246 N.Y.S. 354, affirmed 256 N.Y. 601, 177 N.E. 157; Donahue v. New York Life Insurance Company, 234 App.Div. 241, 254 N.Y.S. 642.

The question now to be decided therefore is did the deceased have the mental capacity to execute the change of beneficiary form at the time he is alleged to have signed it. In concluding that he did not this court was persuaded by the following circumstances. First, there was no witness to the execution of the change of beneficiary form except the mother of the deceased, Mrs. Hettie Smith, who is named as a partial beneficiary in the change. Opposed to the testimony of Mrs. Smith that her son's mind was lucid at the time in question is the massive evidence of this case. The doctor who treated Anderson daily testified that Anderson on August 17, 1950 was in the death throes of cancer, that he was suffering excruciating pain, that he was given sedatives hourly, one grain of morphine every two hours and four grains of various coal tar preparations at the intervening hours, that he was suffering from toxicity caused by uremia as well as from malnutrition. Dr. Daron, the attending physician, also testified that in his opinion Anderson was incapable of exercising his mental faculties at any time on August 17th.

The hospital record on the date of August 15, 1950 with reference to Anderson reads: "Patient is semi-comatose most of the time and responds only partially upon stimulation. He is still deteriorating slowly but steadily." The next doctor's notation on the hospital record, on August 20th, reads: "Patient completely unresponsive—supportive measures continued." In addition to this medical evidence from the attending physician and the hospital records, Dr. Tharpe Posey, an admitted expert on the brain, testified that in his opinion on August 17, 1950 Anderson was incapable of exercising his mental faculties, that he was incapable of forming the mental judgment necessary to change the beneficiary on his insurance.

The only medical evidence produced by the claimants named in the change of beneficiary form was a Dr. Haspel who described himself as an internist and who testified that under the circumstances of this case it was possible but not probable that Anderson had the necessary mental capacity to make the change of beneficiary on August 17th.

Speaking more eloquently than any of the other evidence in the case is the change of beneficiary form itself. By executing this change of beneficiary form Anderson would take the proceeds of his insurance from his wife to whom he had been happily married, who by day was selling brooms and mops to support herself and pay the bills incurred by his sickness and who by night—all night—sat in a chair at his side to attend his needs. This change of beneficiary would leave this devoted woman with $1 and would give $1,999 to his mother who deserted him as a child and who remained out of his life until his last illness. This change of beneficiary form would give

2. "Art. 10—Conflict of laws—Form and effect of instruments—Wills—Movables.—The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed. * * * *"

$5,000 to Anderson's son by a former marriage, whom he had seen on two occasions in his life. It is inconceivable that Anderson in his right mind would deny his wife his insurance, or a substantial part thereof, knowing full well of her devotion, of her bills including the anticipated cost of his own funeral and burial, and give this insurance to persons to whom he manifested no attachment whatever during his entire lifetime.

This court is not unaware of the legal presumption of mental capacity and that upon him who seeks to have declared null and void a will or other testamentary disposition falls the burden of proving that at the precise time the document was executed the testator was without mental capacity. In other words, in the circumstances of this case, the proof must negative the possibility of a lucid interval. 2 Appleman on Insurance Law, 499; 57 American Jurisprudence, 99; Smith v. Harman, 28 Misc. 681, 59 N.Y.S. 1044; Jackson v. Van Dusen, 5 John., N.Y., 144; In re Beneway's Will, 272 App.Div. 463, 71 N.Y.S.2d 361; Succession of Schmidt, 219 La. 675, 53 So.2d 834, 838; Succession of Pizzati, 218 La. 549, 50 So.2d 189; Clanton v. Shattuck, 211 La. 750, 30 So.2d 823; Artigue v. Artigue, 210 La. 208, 26 So.2d 699. Applying this standard, the testamentary incapacity of Harry T. Anderson, Jr., at the moment he signed the change of beneficiary form in question is amply demonstrated.

Let judgment be prepared in accordance herewith.