## SCHWEITZER v. BEAN.

### Opinion delivered June 19, 1922.

1. WILLS—CONTEST OF WILL PROBATED IN ANOTHER STATE.—The will of a person who had domicile in another State in which the will was probated, so far as it relates to the devolution of either real or personal property in this State, may be contested without violating Const. U. S. Ark. 4, § 1, providing that full faith and credit shall be given by each State to the public acts, records and judicial proceedings of every other State.

2. WILLS—INSANITY OF TESTATOR—EVIDENCE.—In a will contest, evidence that a testator thought his daughter had slandered him, and that such was not true, held insufficient to show mental incapacity of testator.

3. WILLS—MENTAL DELUSION.—A groundless belief manifest under suddenly aroused emotions and which lacks persistence and continuity affords no evidence of mental delusion, and the existence of such a groundless belief only settles into a disqualifying mental delusion when it is persisted in and pursued by a logical process of reasoning to an insane conclusion.

4. WILLS—MENTAL DELUSION.—A belief, though unfounded, unreasonable or extravagant, does not constitute an insane delusion if based upon any evidence, however slight.

5.  WILLS—INSANE DELUSION.—Where one conceives something extravagant and believes it as a fact, when in reality it has no existence, but is purely a product of the imagination, and where such belief is so persistent and permanent that the one who entertains it cannot be convinced by any evidence or argument to the contrary, such a one is possessed of an insane delusion.

Appeal from Boone Circuit Court; *J. M. Shinn,* Judge, reversed.

*E. G. Mitchell* and *Shouse & Rowland,* for appellant.

Full faith and credit shall be given to the judgments of sister States. Art. 4, sec. 1, Const. U. S.; 134 U. S. 607; 193 Fed. 332; 40 Cyc. 1237; 52 S. W. 296; 45 S. W. 677; 27 S. W. 1009. The judgment of probate in Dade County, Florida, was conclusive as to all matters of personal property, the doctrine of *"lex domicilii"* controlling. 143 Ark. 192; 103 Tenn. 1; 52 S. W. 296.

The action of the court to vacate and testify was both arbitrary and prejudicial.

Instructions 2, 3, 4, 5, 6, 7, 8 and 9, given by the court were abstract and misleading. A belief based on evidence, however slight, is not a delusion. 87 Ark. 280.

Every man has a right to dispose of his property by will, as he pleases, within statutory limitations. 87 Ark. 243.

The evidence was not sufficient to sustain a verdict against the will. 160 S. W. 1071; 62 Pac. 605; 169 S. W. 852; 66 N. E. 371; 192 Ill. 525; 61 N. E. 652; 25 Pac. 769; 31 Pac. 453; 33 Pac. 542.

*George J. Crump,* for appellee.

The motion to dismiss and the demurrer to the jurisdiction of the court were properly overruled. 143 Ark. 192.

McCULLOCH, C. J. This is a contest, originating in the courts of Boone County, of the will of L. H. Schweitzer, who died on November 16, 1920, in the State of Florida, where he resided.

The testator owned property, both real and personal, in Boone County, and after the last will and testa-

ment was regularly probated in the State of Florida it was filed for probate in the probate court of Boone County.

Appellee, Mrs. Elsie Bean, who was the daughter of the testator, appeared and contested the will, and the cause was tried in the circuit court of Boone County on appeal. The trial before a jury resulted in a verdict against the validity of the will, and a judgment was rendered accordingly, from which an appeal has been prosecuted by the proponents of the will.

The ground of the contest is that the testator was mentally incapacitated to execute a will, in that he labored under an insane delusion that appellee, his daughter, had made statements derogatory to his moral character and had slandered him.

The first point urged by appellants is that the devolution of the personal property owned by the testator in this State is governed by the laws of the domicile of the State where the testator resided, and that, since the will had been duly admitted to probate in that State, a contest of the will, so far as it concerns the personal property, cannot be had in this State, for the reason that this would be in violation of the requirement of the Federal Constitution (Art. IV, sec. 1, Constitution of the U. S.) which provides that "full faith and credit shall be given by each State to the public acts, records and judicial proceedings of every other State."

This question has been decided against the contention of appellants by this court in the recent case of *Selle* v. *Rapp,* 143 Ark. 192. It is true that real estate only was involved in that case, but the court construed our statute to give the right of contest here with respect to any property in this State. It necessarily follows from that decision that a testament relating to personalty as well as real property in this State may be contested here.

It is also contended that the evidence is not sufficient to sustain the verdict.

It appears from the testimony that Schweitzer formerly resided at Harrison, in Boone County, and that many years ago he and his wife, the mother of appellee and two other children, were separated and were divorced. Appellee and the other children took sides with their mother and went away with her, first removing to the State of Kansas and later to the State of Missouri. The testator and his wife divided all of the property he had at that time in an amicable adjustment made between them. The only complaint made about that incident was that appellee claims now that the testator took from her the sum of one hundred dollars which she had earned in raising and selling pigs from a sow which her father had given her.

It also appears that Schweitzer visited appellee once in Missouri and that, to a certain extent, better relations were restored between them, but that there was no complete restoration of confidence and affection.

During the spring and summer of the year 1916, which was about fifteen years after the separation between Schweitzer and appellee's mother, Schweitzer sustained a fracture of one of the bones of his leg, and was confined to his room and bed for a considerable time. He was unmarried at that time and was living in Harrison with a family named Minyard, but the members of that family were not related to him. Appellee heard of her father's misfortune, and came to Harrison for the purpose of making a visit. She stayed there about a week, and she testified in the trial below that during that period she spent about half the time with her father, and that she endeavored to induce him to take possession of another home and furnish it and permit her to stay with him and nurse him, and that he declined to move from the home of the Minyards. She denied that anything unfriendly took place between herself and her father during that visit. Appellee never saw her father again after she left Harrison on that occasion. She went back to her home in Missouri, and she introduced two letters which

he wrote to her during the autumn after her visit to Harrison. Those letters seem to be the basis of appellee's contention that her father was laboring under an insane delusion and they are of sufficient importance in the discussion to copy them in full. The date of each letter is shown and they read as follows:

"The Home Insurance Company

"New York

" (seal)

(Letterhead)

"Harrison Insurance Agency.

"Harrison, Ark., Nov. 16, '16.

"Dear Elsie:

"Since writing you this a. m., I have changed my will, and I thought you ought to know how—as it was, Walter's estate would share equally with you, and I did not think we wanted it that way. I have made a codicil to my will giving Rose Elsie $500, and since I expect to keep my estate intact and at present value if not more,—I thought you would not feel hurt at my giving little Louie Schweitzer Winsted (my only namesake) $500. I had you made executrix—in Walter's stead—(place) to act with L. F. Eoff, who was an executor with Walter.

"While—with care—I may live to a ripe old age— yet my complaint—high blood pressure—is liable to take me off at any moment—this is why I am fixing my affairs, while I can. I hope you are not only satisfied with my arrangement, *but that you are pleased*—you get all now instead of ½ after the several $500 bequeathed to my nieces, the children, and Rose Elsie and little Louie— My friends here are just as good to me as they can be, and I owe them some recognition. I believe you will agree with me in this.

"Your loving

"Father."

"Harrison, Arkansas, Dec. 8, 1916.
"Mrs. Elsie Bean, Clarksdale, Mo.

"My daughter: I am sending you what I presume will be a little surprise. I have learned of your treachery and your attempt to blacken my good name and character, and too, when I was helpless; and hoping the possibility of another opportunity, I have in a just, newly made will disinherited you, giving you $1 only, with instructions to the administrator to mail to your address, and I ask you not to be at my funeral. I do not want any one as deceitful as you seem to have become pretending to mourn over my remains.

"The Schweitzer blood must in some way have all oozed out of your veins. I do not understand how you could under *any influence* show the deceit you have, and be a Schweitzer.

"You need not ask for explanations. You know the false and slanderous representations you made while here, while I was helpless. What should I expect if I were dead of one that would take such chances while I was alive? I want to say, however, that your statements did not injure me one whit; but on the contrary made sympathy for me, and lessened the respect they had for you, feeling that if your representations were true (and they knew they were false), you, if a true daughter, would have tried to hide.

"I am in perfect health, and have regained my usual weight. The doctor says 'there is not a man in ten in as good health at my age.' I expect to live ten or fifteen years yet and fight evil and the devil wherever I meet them.

"Your slandered Father."

Appellee testified that she answered the last of these letters and protested her innocence of the charge of having slandered her father, and that she expressed to him continued affection and pleaded for his affection in return. She never heard from her father after the last letter copied above, and never saw him again.

It is inferable from the statements of these letters and the letters writen by Schweitzer to appellee that he had made a will in which she was, to some extent, the beneficiary, and that he made a slight change in this will at the time of the first letter, and made another change disinheriting her at the time he wrote the last letter. But the testament now proposed for probate was not executed until September 15, 1919. Schweitzer had married again in the meantime, and this will was executed in the State of Florida, where he was then residing.

Appellee seems to rely entirely upon the effect of these two letters and her own testimony to the effect that the charge against her of slandering her father or saying anything derogatory to his moral character was unfounded. There is nothing else in the record tending in any degree to prove that the testator was, at the time he made this will, laboring under an insane delusion. We think that this testimony, standing by itself, is wholly insufficient to justify the finding by the jury of mental incapacity upon the part of the testator.

The last letter written by the testator to his daughter is sufficient only to show that he entertained a violent feeling of anger, dislike and resentment, but it does not, of itself, even coupled with the testimony showing that this feeling was unfounded, establish the existence of mental unsoundness.

The law on this subject was fully discussed by this court in the case of *Taylor* v. *McClintock*, 87 Ark. 243, and in the opinion it was stated that "a perversion of the sentiments and affections—manifested in jealousy, anger, hate or resentment, however violent and unnatural, will not defeat a will unless the emanation of a delusion." Nor is it shown that the testator persisted in the belief indicated in his letter that his daughter had slandered him, unless it is the fact that he never responded to her letters and finally made the will now proposed disinheriting his daughter. But this will was made under such

circumstances that the inference is not warranted, in the absence of further proof, that he persisted in his belief concerning his daughter's conduct towards him. The will was, as before stated, made nearly three years later and under wholly different circumstances, the testator having married again and removed to the State of Florida.

A mere groundless belief manifested under suddenly aroused emotions, and which lacks persistence and continuity, affords no evidence of mental delusion. The existence of such a groundless belief only settles into what the law recognizes as a disqualifying mental delusion when it is persisted in and "pursued by a logical process of reasoning to an insane conclusion." *Taylor* v. *McClintock, supra;* 1 Wharton & Stille Med. Jur. sec. 1020 *et seq.*

In addition to that, there is nothing in the record to show that this unfounded charge made by the testator against his daughter was not based on some evidence. Appellee testified herself that she was innocent of the charge, but this does not show that the testator himself had no evidence of such misconduct. Several witnesses, in fact, testified that appellee while visiting in Harrison at the time that her father was afflicted made serious charges reflecting upon his moral character, and there is nothing in the evidence which justifies a finding that these charges were not communicated to her father. Appellee denied that she made these statements concerning her father, and the truth of that matter was, of course, a question for the determination of the jury. But, as before stated, this does not show that the testator did not receive some evidence that his daughter had, in fact, made such statements derogatory to his character.

A belief, however unfounded, unreasonable or extravagant, does not constitute an insane delusion if it is based upon any evidence, however slight. In *Taylor* v. *McClintock, supra,* it was said: "A belief founded on evidence, however slight, necessarily involves the exercise of the

mental faculties of perception and reason; and where this is the case, no matter how imperfect the reasoning process may be, or how erroneous the conclusion reached, it is not an insane delusion.''

The definition of an insane delusion, which we must take as a guide in the present case, was definitely and concisely stated in *Taylor* v. *McClintock, supra,* is as follows: ''Where one conceives something extravagant, and believes it as a fact, when in reality it has no existence, but is purely a product of the imagination, and where such belief is so persistent and permanent that the one who entertains it cannot be convinced by any evidence or argument to the contrary, such a one is possessed of an insane delusion.'' In support of the correctness of this definition we cited many authorities, among which is the leading English case of *Dew* v. *Clark,* 3 Add. Ecc. 79; and there are many other authorities which might be cited giving the definition in substance the same. For instance, the Kentucky Court of Appeals in a comparatively recent decision stated the following definition: ''An insane delusion is an idea or belief which springs spontaneously from a diseased or perverted mind without reason or without foundation in fact; it is distinguishable from a belief which is founded upon prejudice or aversion, no matter how unreasonable or unfounded the prejudice or aversion may be. If it is the product of a reasoning mind, no matter how slight the evidence upon which it is based, it cannot be classed as an insane delusion.'' *Coffey* v. *Miller,* 160 Ky. 415, 169 S. W. 852.

The evidence in this case fails to come up to the requirements of that definition. The groundless belief was not shown to have been permanently persisted in, nor is it shown that there was no evidence upon which it was based. There was no other evidence in this case by way of expert witnesses or otherwise to establish mental weakness or incapacity on the part of the testator. Not a single witness testified that he had any eccentricities, much less indications of insanity, either partial or gen-

eral. On the contrary, numerous witnesses, one of whom qualified as an expert on the subject, testified that they had known Schweitzer for many years and that he gave no indications of lack of mental capacity.

If the verdict in this case be sustained, it must be upon bare inference from the fact that he stated in his letter to his daughter his belief in the groundless charge and subsequently made his will disinheriting her, that he persistently labored under this belief, unsupported by any evidence whatever, and against all arguments and proof to the contrary.

The judgment is therefore reversed, and the cause will be remanded for a new trial.