**TAYLOR v. UNITED STATES et al.**

Civ. A. No. 332.

United States District Court
W. D. Arkansas, Harrison Division.

June 12, 1953.

J. Smith Henley, Harrison, Ark., for plaintiff.

R. E. Rush, Harrison, Ark., for defendant Crawford B. Taylor.

R. S. Wilson, U. S. Atty., Charles A. Beasley, Jr. and Paul Wolfe, Asst. U. S. Attys., Fort Smith, Ark., for U. S.

JOHN E. MILLER, District Judge.

On May 12, 1952, plaintiff filed her complaint against the defendants in which she alleged that she was the widow of Darwin P. Taylor, who died July 28, 1949, while on inactive status as a member of the United States Naval Reserve, and that at his death he was the holder of a valid policy of insurance on his life in the amount of $10,000, issued under the National Life Insurance Act of 1940 and subsequent amendments.

Plaintiff further alleged that on and prior to April 23, 1944, she was the principal beneficiary of the said contract of insurance, but that on said date the decedent, Darwin P. Taylor, attempted to change the beneficiary designation to the defendant, Crawford B. Taylor, as principal beneficiary; that "Such attempted change was ineffectual and a legal nullity for the reason that on April 23, 1944, Darwin P. Taylor did not have clearness of mind and memory sufficient to enable him to know the nature of the property for which he was about to name a beneficiary, the nature of the act he was about to perform, the names and identities of those who were the natural objects of his bounty, his relationship toward them and an appreciation of the consequences of his act uninfluenced by any material delusions, but rather, on said date of said attempted change in designation of beneficiary, decedent was of unsound mind and suffering from a form of insanity known as dementia praecox and was totally and absolutely incompetent to make any lawful change of beneficiary."

"A disagreement concerning validity of plaintiff's claim to the proceeds of said policy of insurance has arisen. The defendant, United States of America, through the Veterans Administration, has denied plaintiff's claim to the proceeds of said policy on the alleged ground that decedent, Darwin P. Taylor, prior to decedent's death and on April 23, 1944, made a valid change of beneficiary, designating defendant, Crawford B. Taylor, as such principal beneficiary, and defendant, United States of America, is now about to pay the proceeds of said insurance contract to the defendant, Crawford B. Taylor."

The plaintiff alleged that she is the beneficiary of the said insurance contract and prays judgment against the United States

of America for the sum of $10,000, interest, costs and attorney's fees.

On June 4, 1952, the defendant, Crawford B. Taylor, filed his answer in which he admitted the allegations of plaintiff's complaint, except the allegations that the decedent, Darwin P. Taylor, was mentally incompetent to effect the change of beneficiary, that the plaintiff is the present beneficiary of the policy, and that the plaintiff is entitled to recover the said sum of $10,-000 or to any other relief, which allegations said defendant denied. Included in the said defendant's answer was a cross-claim against the defendant, United States of America, in which the defendant, Crawford B. Taylor, alleged that he was the legal beneficiary of the said policy and prayed judgment against the United States of America for $10,000, interest, costs and attorney's fees.

On July 29, 1952, the defendant, United States of America, filed its answer in which it denied that the decedent, Darwin P. Taylor, was mentally incompetent to effect the change of beneficiary, denied that it was about to pay the proceeds of the insurance contract to the defendant, Crawford B. Taylor, denied that plaintiff was the beneficiary, denied that plaintiff was entitled to the judgment and relief prayed, and specifically denied that the plaintiff would be entitled to interest and costs in any event. The said defendant admitted the remaining allegations of the plaintiff's complaint.

The defendant, United States of America, admitted the allegations of the defendant, Crawford B. Taylor's cross-claim, but denied that he was entitled to recover interest and costs against the United States in any event.

Along with its answer the defendant, United States of America, filed its counter-claim for interpleader in which it admitted liability under the policy to the person or persons lawfully entitled to the benefits and alleged that it stood ready and willing to pay the proceeds to the legal beneficiary, but could not safely make payment because of the conflicting claims. The said defendant prayed that the Court adjudge which, if either, of the claimants are entitled to the proceeds and to direct payment of the money to the person or persons entitled thereto; that the Court discharge the said defendant from any and all liability under said policy except to the person or persons adjudged to be entitled to the proceeds; and that the Court award the said defendant its costs and such other relief to which it is entitled.

On March 12, 1953, the case was tried to the Court without a jury.

At the trial of the case the parties agreed that prior to April 23, 1944, Opal Lee Taylor was the principal beneficiary and her daughter, Mary Alice Taylor, contingent beneficiary of National Service Life Insurance Policy No. N–4 465 528 which was issued upon the life of Darwin P. Taylor, husband of the said Opal Lee Taylor and father of the said Mary Alice Taylor, in the sum of $10,000; that on April 23, 1944, the decedent, Darwin P. Taylor, in due form made a change of beneficiary designation to Crawford B. Taylor, father of the decedent, as principal beneficiary, and Ambrose N. Taylor, brother, as contingent beneficiary; that the sole question for determination by the Court was whether the decedent, Darwin P. Taylor, had sufficient mental capacity on April 23, 1944, to effect a valid and legal change of beneficiary.

At the conclusion of the trial the case was submitted subject to the taking and filing of depositions of non-resident witnesses and the filing of briefs in support of their respective contentions. This has now been done, and the Court, after considering the pleadings, the ore tenus testimony of the witnesses, the depositions, the exhibits and the briefs of the parties, has filed with the Clerk its formal findings of fact and conclusions of law, separately stated.

It is not necessary to incorporate herein the full findings of fact, and only such reference to the facts as is necessary to a clear understanding of the issues will be made.

Plaintiff is the widow of Darwin P. Taylor and a citizen and resident of Searcy County, Arkansas, which is within the Harrison Division of the Western District of Arkansas.

Defendant, Crawford B. Taylor, is a citizen and resident of the State of Arkansas and resides in Boone County, Arkansas.

A disagreement has arisen between the plaintiff and the defendant, Crawford B. Taylor, as to which of the said parties is entitled to the proceeds of National Service Life Insurance Policy No. N-4 465 528 which was issued upon the life of Darwin P. Taylor, husband of the plaintiff and son of the defendant, Crawford B. Taylor, in the sum of $10,000.

Darwin P. Taylor died on July 28, 1949, while on inactive status as a member of the United States Naval Reserve, and at the time of his death was the holder of Policy No. N-4 465 528 insuring his life in the sum of $10,000, which policy was issued under the National Life Insurance Act of 1940 and subsequent amendments, and was in full force and effect at the time of his death.

On and prior to April 23, 1944, plaintiff was the designated principal beneficiary and Mary Alice Taylor, daughter of the plaintiff and the insured, was the contingent beneficiary. On April 23, 1944, the insured in due form made a change of beneficiary designation to Crawford B. Taylor, his father, as principal beneficiary, and Ambrose N. Taylor, his brother, as contingent beneficiary. The Board of Veterans' Appeals held that the change was valid and that Crawford B. Taylor was entitled to the proceeds of the policy, and the plaintiff thereafter filed this suit.

At the trial the plaintiff introduced the ore tenus testimony of four witnesses, and before final submission of the case the deposition of Dr. Philip H. Moore was introduced. The defendant introduced the ore tenus testimony of two witnesses and the depositions of three witnesses, and both parties introduced and called the Court's attention to substantial portions of the decedent's Navy medical record.

The Court has weighed and studied carefully all the evidence and considered the demeanor and credibility of the witnesses, and the totality of the evidence convinces the Court that on April 23, 1944, Darwin

P. Taylor did not have sufficient mental capacity to comprehend the nature and consequence of his act in attempting to change the beneficiaries of his National Service Life Insurance Policy. Both the decedent's medical records and the testimony of Dr. Moore disclose that during the period from October, 1943, to July, 1944, decedent was laboring under various delusions to such an extent that he was unable to perform his duties. Although there had been no marital difficulty between decedent and the plaintiff, decedent acquired an insane delusion of such difficulty at the same time he acquired delusions of various physical ailments. The insane delusion of marital discord, initiated during this period when decedent was under extraordinary stress, persisted until decedent's death.

Viewing the evidence as a whole, the Court is convinced that Dr. Fletcher correctly analyzed decedent's medical record and that he was afflicted with a paranoid type of dementia praecox which was manifested by the various delusions entertained by decedent on different occasions and particularly during the period when he attempted to change the beneficiary of his policy. The attempted change was purely a product of decedent's insane delusion of marital difficulty, which was based upon no facts whatsoever. The effect of decedent's mental disorder and delusion was such as to prevent the decedent from comprehending the nature and consequence of his act in attempting to change the beneficiaries of his policy.

## Discussion

Title 38 U.S.C.A. § 802(g) provides:

"The insurance shall be payable only to a widow, widower, child (including a stepchild or an illegitimate child if designated as beneficiary by the insured), parent, brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes herein provided, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such in-

surance without the consent of such beneficiary or beneficiaries but only within the classes herein provided: Provided, That the provisions of this subsection as to the restricted permitted class of beneficiaries shall not apply to any national service life-insurance policy maturing on or after August 1, 1946."

By virtue of the authority vested in him by 38 U.S.C.A. § 808, the Administrator of Veterans' Affairs promulgated the following rule which may be found in Volume 38, Code of Federal Regulations, Section 8.47, Page 230:

"The insured shall have the right at any time, and from time to time, and without the knowledge or consent of the beneficiary to cancel the beneficiary designation, or to change the beneficiary, but a change of beneficiary to a person not within the permitted class of beneficiaries set forth in § 8.46 shall not be effective as to insurance which matured prior to August 1, 1946. A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans' Administration by the insured or his agent, and must contain sufficient information to identify the insured. Whenever practicable such notices shall be given on blanks prescribed by the Veterans' Administration. Upon receipt by the Veterans' Administration, a valid designation or change of beneficiary shall be deemed to be effective as of the date of execution: Provided, that any payment made before proper notice of designation or change of beneficiary has been received in the Veterans' Administration shall be deemed to have been properly made and to satisfy fully the obligations of the United States under such insurance policy to the extent of such payments."

In the instant case the plaintiff makes no contention that the insured failed to comply with the statute or the regulation insofar as the mechanics of effecting the change of beneficiary are concerned, and the Court must assume that the change of beneficiary executed by the insured on April 23, 1944, was valid, unless the plaintiff has established by a preponderance of the evidence that the insured as of that date was mentally incompetent to effect the change.

In determining the requirement of mental capacity the Court is confronted with the preliminary question of whether federal or state law governs.

■ The general rule is well settled that as to the validity and construction of National Service Life Insurance policies federal law governs. Lembcke v. United States, 2 Cir., 181 F.2d 703 (meaning of word "widow") ; Pack v. United States, 9 Cir., 176 F.2d 770 (inapplicability of California community property law) ; Barton v. United States, D.C.Cal., 75 F.Supp. 703. See also, Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838.

The reason for the rule, of course, is the obvious intention of Congress to secure nationwide uniformity "in all details for the issuance and administration and settlement of service life insurance". Barton v. United States, supra [75 F.Supp. 705].

■ It has also been held that federal law, rather than state law, governs in determining whether a person is insane within the meaning of the World War Veterans' Act of 1924, § 19, as amended, 38 U.S.C.A. §§ 445–445d. Hilbert v. United States, D.C.Ill., 43 F.Supp. 838. In this connection it may be noted that the statute under which the instant suit is being brought, 38 U.S.C.A. § 817, provides:

"In the event of disagreement as to any claim arising under this chapter, suit may be brought in the same manner and subject to the same conditions and limitations as are applicable to the United States Government life (converted) insurance under the provisions of sections 445 and 551 of this title."

Thus the reasoning of the decision in Hilbert v. United States would apply with equal force to National Service Life Insurance policies, since section 445 has been

148

incorporated into the National Service Life Insurance Act. See 2 A.L.R.2d 489, 510.

While none of the cases cited hereinabove are factually in point with the instant case, the reasoning in those cases is persuasive and leads the Court to believe and to hold that the mental capacity required of an insured to change the beneficiary of a National Service Life Insurance policy is a question of federal law.

It has been held repeatedly that "In order to establish the fact that there has been a change of beneficiary, there must be evidence of an intention of the insured to change the beneficiary followed by some affirmative act of the insured having for its purpose the carrying into effect of such intention." Coleman v. United States, 85 U.S.App.D.C. 145, 176 F.2d 469, 471; Widney v. United States, 10 Cir., 178 F.2d 880; Shapiro v. United States, 2 Cir., 166 F.2d 240, certiorari denied 334 U.S. 859, 68 S.Ct. 1533, 92 L.Ed. 1779; 2 A.L.R.2d 489–511 and cases cited therein. In the instant case the mechanics of the change of beneficiary were actually effected, and thus the only question is whether the insured had sufficient mental capacity to form a valid intention and to effect a valid change of beneficiary.

■ As heretofore stated, the Court feels that federal law governs the question of mental capacity, but in the present case whether federal or state law governs is immaterial because the federal law and the state law are substantially the same in this regard. In 29 Am.Jur., Insurance, Section 1322, Page 990, it is said:

"It is clearly the general, if not universal, rule that if at the time he attempted to change the beneficiaries under an insurance policy the insured was mentally incompetent, such attempted change is ineffective; and the original beneficiary has such an interest in the proceeds as will entitle him to avoid the change and recover under the policy. The mental capacity necessary for a valid change of beneficiaries by an insured is the same as that necessary to execute a valid will, deed, or contract."

See also Wooten v. Wooten, 176 Ark. 1174, 5 S.W.2d 340; Rosenblum v. Manufacturers Trust Co., 270 N.Y. 79, 200 N.E. 587, 105 A.L.R. 950 et seq.; 46 C.J.S., Insurance, § 1175, p. 73; Metropolitan Life Ins. Co. v. Anderson, D.C.La., 101 F.Supp. 808.

■ To be capable of effecting a valid change of beneficiary a person should have clearness of mind and memory sufficient to know the nature of the property for which he is about to name a beneficiary, the nature of the act which he is about to perform, the names and identities of those who are the natural objects of his bounty; his relationship towards them, and the consequences of his act, uninfluenced by any material delusions. See 57 Am.Jur., Wills, Section 64; 26 C.J.S., Deeds, § 54(b); Walsh v. Fairhead, Executrix, 215 Ark. 218, 225, 219 S.W.2d 941.

■ The Arkansas rule is stated in Ebrite v. Brookhyser, 219 Ark. 676, at page 679, 244 S.W.2d 625, at page 627, as follows:

"On this issue of mental capacity, the governing rule has been many times announced by this court. In the comparatively recent case of McKindley v. Humphrey, 204 Ark. 333, 161 S.W.2d 962, 963, we said: 'If the maker of a deed, will, *or other instrument* has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument.'" (Emphasis added by Court.)

■ As is frankly admitted in plaintiff's brief, the burden of proof is upon her to establish by a preponderance of the evidence that on April 23, 1944, the date of the purported change of beneficiary, the decedent lacked testamentary capacity.

In 57 Am.Jur., Wills, Sections 80, 81 and 82, beginning at page 90, it is said:

"Partial insanity invalidates a will which is the direct offspring thereof. A will which is the product of an insane delusion

also is invalid for want of testamentary capacity, and when a will is ascertained to be the result of an insane delusion, it should be declared void without inquiring what the testator would or would not have done if he had been of sound mind. But to avoid a will because the testator entertained a delusion, the delusion must be an insane delusion, and the will must be the product thereof * * *.

"An insane delusion which will render one incapable of making a will is difficult to define, but, generally speaking, it may be defined as a belief in things which do not exist, and which no rational mind would believe to exist. It is such an aberration as indicates an unsound and deranged condition of the mental faculties. The essence of an insane delusion is that it has no basis in reason, cannot be dispelled by reason, and can be accounted for only as the product of mental disorder. * * *

"To justify the setting aside of a will on the ground that the testator was possessed of an insane delusion, it must be shown that the will was the product or offspring of the delusion, or at least, that it was influenced by the delusion. * * *

"To constitute a delusion sufficient to invalidate a will, the subject matter must have no foundation in fact, for there is no such thing as a delusion founded upon facts."

In the 1952 supplement to the same Volume, at page 5 it is said:

"The mental error must have been actually operative in the production of the will in order to invalidate it. The evidence must show that the delusion existed in the testator's mind at the time the will was finally composed. And symptomatic manifestations of the delusion must be shown at or near the date of the will. The closeness required of the connection in time between the last disclosure of the delusion and the date of the will must depend on the nature and intensity of the infirmity and the circumstances of its expression. But it is always open to the contestant to show that the derangement appeared after the testation as well as before,

and thus promote the inference, if its nature permits it, that it was continuous between. However, any presumption or inference that may arise, from the nature of recency of the delusion, that the condition existed at the time of the will, may be rebutted by evidence of its having lapsed or vanished before that time. Clearly the terms of the will itself may be considered in deciding whether the insanity actuated the testator's mind in composing it."

In 175 A.L.R. 919, it is said:

"The repeated insertion, in definitions of insane delusion or monomania, of the requirement that the belief or mental attitude must not have been based on any evidence or external cause whatever, however slight, leads to the question whether a contestant must exclude, by affirmative proof, the existence of any such evidence or cause. In the majority of cases it has been assumed, without discussion, that the absence of ground for the delusion may be inferred from the general situation and the lack of any foundation for it in fact."

At page 927 of the same Volume, it is said:

"It is to be noted that in most of the successful attacks on wills for antipathy or animosity toward a relative, something more than the delusion itself is shown. In some, the evidence is of irrational acts or expressions, in others it is of other and unrelated delusions. In other words, the aberration in question is shown against a background of abnormality, so that even if independently it could not be found to have been an insane delusion or monomania, it may be found to be such upon the total evidence at hand.

"Other delusions are, of course, the most persuasive."

And at page 966 it is said:

"Under the general principle that to invalidate a will the delusion must affirmatively appear to have been operative in the testamentary act, the evi-

150

dence must show that it existed in the testator's mind at the time the instrument was finally composed. Partial insanity cannot be presumed to be chronic, and cannot be inferred to be such from opinion testimony alone. Symptomatic manifestations of the delusion must be shown at or near the date of the will.

"It is to be noticed that medical authorities usually treat paranoia, monomania, specific insane delusion, as always chronic and never recessive."

The Arkansas law is substantially in accord with the above general statements of the law. With regard to delusions, the case of Taylor v. McClintock, 87 Ark. 243, 112 S.W. 405, is the leading Arkansas case. Beginning at page 273 of 87 Ark., at page 411 of 112 S.W., the Court said, inter alia:

"The test of testamentary capacity as declared by this court is that the testator shall have capacity 'to retain in memory, without prompting, the extent and condition of his property, and comprehend to whom he was giving it, and be capable of appreciating the deserts and relations to him of others whom he excluded from participation in the estate.' * * *

"Therefore nothing short of mental unsoundness, when measured by the test above announced, will avoid a will. Moral—or what the books term 'medical'—insanity, a perversion of the sentiments and affections, manifested in jealousy, anger, hate, or resentment, however violent and unnatural, will not defeat a will, unless the emanation of a delusion. * * *

"The test of testamentary capacity is necessarily the same, whether the insanity be attributable to dementia or insane delusion—paranoia. * * *

" 'Paranoia' is a term used by medical experts, alienists, and authors on medical jurisprudence to designate the form of insanity characterized by systematized delusions. A systematized delusion is one based on a false premise, pursued by a logical process of reasoning to an insane conclusion. * *

"It is unquestionably true that one may be possessed of a delusion concerning one

subject, and yet be of sound mind on all other subjects * * *.

"The mere existence of a delusion, however as we have said, 'is not sufficient to invalidate a will. Its connection with the will must be made manifest and shown to have influenced its provisions.' * * *

"This delusion, which operates to defeat a will made under its influence, may be defined as follows: Where one conceives something extravagant and believes it as a fact, when in reality it has no existence, but is purely a product of the imagination, and where such belief is so persistent and permanent that the one who entertains it cannot be convinced by any evidence or argument to the contrary, such a one is possessed of an insane delusion. * * *

" 'A belief based on evidence, however slight, is not a delusion, which rests upon no evidence but mere surmise.' * * *

"In will contests, where the unsoundness of mind alleged is dementia, the inequalities of the will, the nature and extent of the estate and the sources of its acquisition, are proper to be considered in determining the testamentary capacity. Where delusion is alleged as the ground of incapacity, this principle can have no application, further than to show that the testator, if the delusion be established, was dominated by it at the time the will was executed. * * *"

See also McWilliams v. Neill, 202 Ark. 1087, 155 S.W.2d 344; Schweitzer v. Bean, 154 Ark. 228, 242 S.W. 63.

In Brown v. Emerson, 205 Ark. 735, at page 737, 170 S.W.2d 1019, at page 1021, the Court quoted with approval the following language:

" 'We do not mean to say that a will should be disturbed merely because it is unreasonable and unjust, but where * * * it does violence to the natural instincts of the heart, to the dictates of fatherly affection, to natural justice, to solemn promises, to moral duty, such unexplained inequality and unreasonableness is entitled to great influence in considering the question of testamentary capacity and undue influence.' If the provisions of the will are unjust,.

unreasonable and unnatural, the court may consider that fact as a circumstance in determining the mental capacity of the testator."

See also Scott v. Dodson, Executor, 214 Ark. 1, 11, 214 S.W.2d 357; Howell v. Miller, 173 Ark. 527, 292 S.W. 1005.

And in Metropolitan Life Ins. Co. v. Anderson, D.C.La., 101 F.Supp. 808, at page 811, the Court said:

"Speaking more eloquently than any of the other evidence in the case is the change of beneficiary form itself. By executing this change of beneficiary form Anderson would take the proceeds of his insurance from his wife to whom he had been happily married, who by day was selling brooms and mops to support herself and pay the bills incurred by his sickness and who by night—all night—sat in a chair at his side to attend his needs. This change of beneficiary would leave this devoted woman with $1 and would give $1,999 to his mother who deserted him as a child and who remained out of his life until his last illness. This change of beneficiary form would give $5,000 to Anderson's son by a former marriage, whom he had seen on two occasions in his life. It is inconceivable that Anderson in his right mind would deny his wife his insurance, or a substantial part thereof, knowing full well of her devotion, of her bills including the anticipated cost of his own funeral and burial, and give this insurance to persons to whom he manifested no attachment whatever during his entire lifetime."

█ Applying the law, as above stated, to the facts in the instant case, the Court is of the opinion that on April 23, 1944, Darwin P. Taylor did not have sufficient mental capacity to know the nature and consequence of his act in attempting to change the beneficiary of his National Life Insurance Policy and was acting under a material delusion, and that he therefore could not and did not effect a valid change of beneficiary.

In so concluding, the Court was persuaded by the following facts:

Prior to the early part of 1943, the decedent had shown no indications of mental instability. The Court was favorably impressed with the testimony of the plaintiff, and she testified that there had been no serious marital difficulty between the decedent and her prior to 1948. And, in the decedent's health record the following entry appeared under date of May 6, 1943, "Patient also gave history of having been overly concerned or 'worried' about his wife's condition. States that she had been complaining of abdominal pain, etc." However, the health record discloses that on July 6, 1944, decedent gave the following family history: "Father married eight times and according to s.m. has rather violent temper. Patient has been married 11 yrs one child dead, one living. Has been away from home most of time, and his wife's parents, who have a violent antipathy toward the Navy, have contributed to the alienation of this married couple. Patient is considering divorce." As heretofore stated, plaintiff testified that there was no marital discord between them and that her parents had no antipathy toward the Navy. Thus there was no factual basis for the decedent's delusion in this regard, and it is significant that at the same time he entertained delusions of various aches and pains in different parts of his body, threatened suicide, performed unusual acts such as putting catsup etc. on ice cream, and conversed erratically. And previously, when examined March 31, 1943, he had entertained delusions of paralysis and persecution. It is also significant that the delusions and strange actions began in 1943 and continued until July 6, 1944, when he was examined and his condition diagnosed as Psychoneurosis, Neurasthenia. Under date of July 5, 1944, the health record reflects: "Since Oct. 30, 1943 activities aboard this ship have been characterized by marked instability (then follow a list of decedent's peculiar actions and delusions). These episodes have increased in frequency, three having occurred in the last fourteen days."

The Court is convinced that it was decedent's insane delusion of marital trouble, wholly unfounded in fact, that prompted his action in changing the beneficiary of his policy, and that on April 23, 1944, he was acting under the influence of that delusion. Especially is this true in the light of the potential effect of the said change. It seems impossible that decedent in his right mind would take away from his wife, who had given her life to nursing and caring for their deformed, helpless and mentally retarded child while he was away at sea, and to making a home for him while he was on the mainland, and give to a father who had been married seven or eight times and with whom the decedent had not been particularly close.

Stated differently, the Court believes that Dr. Fletcher was correct in her analysis of decedent's health record, i. e., that he was afflicted with a paranoid type of dementia praecox which was manifested by delusions, and that such condition was a chronic type of disorder which existed on, before and after April 23, 1944, and was particularly manifested by his delusion of marital trouble. The fact that his condition was chronic, especially the delusion of marital discord, and continued long after it was first noted is evidenced by the very manner in which decedent met his death, i. e., while making an unprovoked attack upon the plaintiff. It is also to be remembered that until his death decedent registered various unfounded complaints or delusions, such as the belief that his hands and feet were paralyzed.

Having decided that the decedent lacked sufficient mental capacity to effect the change of beneficiary and that the attempted change was invalid, the Court now must determine several supplemental questions.

 If a beneficiary intentionally and feloniously kills the insured, he or she is barred from claiming insurance proceeds on the life of the insured. Austin v. United States, 7 Cir., 125 F.2d 816; United States v. Burns, D.C.Md., 103 F.Supp. 690, affirmed 4 Cir., 200 F.2d 106; United States v. Kwasniewski, D.C.Mich., 91 F. Supp. 847. And an acquittal on a criminal charge is not res judicata in a subsequent civil action upon the policy. United States v. Burns, supra; United States v. Kwasniewski, supra; Horn v. Cole, Administrator, 203 Ark. 361, 156 S.W.2d 787. Thus, the fact that the plaintiff herein was acquitted of the criminal charge prosecuted against her in the state court is not binding on this Court, but the Court is convinced from the testimony that in shooting her husband the plaintiff was acting in necessary self defense and should not be denied recovery under the policy by reason of that fact.

Therefore, plaintiff is entitled to the proceeds of the policy and to settlement under the provisions of 38 U.S.C.A. § 802(t), and 38 Code of Federal Regulations, Section 8.77, Page 234.

 However, plaintiff is not entitled to recover interest and costs against the United States.

 In United States v. Cathcard, D.C.Neb., 70 F.Supp. 653, at page 664, the Court said:

"The United States will not be required to pay interest except where liability therefor is imposed by statute or assumed by contract. Seaboard Air Lines Railway Company v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664. Interest may not be recovered against the United States upon unpaid monthly installments from the date on which they have become due under a policy of war risk insurance. United States v. Worley, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887. Nor may interest be awarded against the United States on a judgment for such installments. Jackson v. United States, 281 U.S. 344, 50 S.Ct. 294, 74 L.Ed. 891."

And, in United States v. Worley, Administratrix, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887, the Court held that neither interest nor costs could be allowed against the United States in an action upon a war risk insurance contract. See, also, United States v. Citizens Loan & Trust Co., Administrator, 316 U.S. 209, 62 S.Ct. 1026, 86

L.Ed. 1387; Byrd v. United States, D.C. Ohio, 103 F.Supp. 128.

In an action brought pursuant to the provisions of 38 U.S.C.A. § 817, "the court, as a part of its judgment or decree, shall determine and allow reasonable fees for the attorneys of the successful party or parties and apportion same if proper, said fees not to exceed 10 per centum of the amount recovered and to be paid by the Veterans' Administration out of the payments to be made under the judgment or decree at a rate not exceeding one-tenth of each of such payments until paid." 38 U.S.C.A. § 551; Barnes v. United States, D.C.Pa., 95 F.Supp. 541.

Plaintiff's attorney has been exceedingly diligent in his preparation and presentation of plaintiff's case. His zeal and competency are such as to entitle him to the maximum statutory fee or $1,000.

To summarize the holding of the Court herein, it may be stated that:

(a) The Court has jurisdiction of the subject matter of and the parties to this cause of action.

(b) On April 23, 1944, Darwin P. Taylor lacked sufficient mental capacity to effect a valid change of beneficiary of National Service Life Insurance Policy No. N–4 465 528 and the purported change was invalid and of no force and effect.

(c) The plaintiff, Opal Lee Taylor, is the legal beneficiary of the said policy and is entitled to recover of and from the defendant, United States of America, the proceeds thereof in accordance with the provisions of 38 U.S.C.A. § 802(t).

(d) The plaintiff is not entitled to recover interest and costs of and from the United States of America.

(e) A reasonable attorney's fee for plaintiff's attorney is $1,000 which is to be paid as follows: ten per cent of the amount of the accrued unpaid installments at the time of their collection, and ten per cent of the remaining installments as and when they are paid to the plaintiff.

A judgment in accordance with the above should be entered.