**Mrs. Mary Miles FRAKES, Mrs. Charlene Miles Crenshaw, Mrs. Frances Miles Cook, and Cindy Luan Cook, b/n/f Mrs. Frances Miles Cook, Plaintiffs,**

v.

**UNITED STATES of America, Defendant,**

v.

**Lenna S. MILES, Third-Party Defendant.**

**Civ. A. No. 7999.**

United States District Court
N. D. Georgia,
Atlanta Division.

Feb. 25, 1964.

Woodruff, Savell, Lane & Williams, Atlanta, Ga., for plaintiffs.

Charles L. Goodson, U. S. Atty., Atlanta, Ga., for defendant.

MORGAN, District Judge.

Mrs. Mary Miles Frakes, Mrs. Charlene Miles Crenshaw, Mrs. Frances Miles Cook, and Cindy Luan Cook, by next friend Mrs. Frances Miles Cook, on July 20, 1962, as plaintiffs, filed this action against the United States of America, seeking recovery as beneficiaries under a National Service Life Insurance policy in the amount of $10,000.00, issued upon the life of Howard L. Miles, deceased. The insured was the father of three of the plaintiffs and the grandfather of one of the plaintiffs, all of plaintiffs being named as beneficiaries under designation of beneficiary dated May 6, 1960.

An answer was filed by the defendant through the United States Attorney, admitting the plaintiffs' allegations that

they were the designated beneficiaries under the policy at the time of the insured's death on May 17, 1960, but setting up a claim for interpleader wherein it was indicated that a conflicting claim had been filed with the Veterans Administration by Mrs. Lenna S. Miles, wife of the insured.

Thereafter, on November 9, 1962, Mrs. Lenna S. Miles intervened as a third party defendant, contending that the change of beneficiary executed by the insured, Howard Miles, was invalid and void for the reason that on May 6, 1960, Howard Miles was mentally incapacitated, and, also, on that date because of his physical and mental weakness, he was easily subjected to persuasion and undue influence.

Plaintiffs' action seeks to recover $10,000.00, together with interest and costs of action.

On December 16, 1963, the above action came on for trial before the Court without a jury, and, after hearing the evidence, receiving the briefs and written arguments of counsel, the case is now properly before the Court for determination.

The plaintiffs being reisdents of the Northern District of Georgia, Atlanta Division, and the defendant being the United States of America, this Court has jurisdiction of this action.

The sole question to be determined in the case at hand is the question of the mental capacity of the veteran Howard Miles on the date of May 6, 1960, being the date these four plaintiffs were, by the change of beneficiary, designated as beneficiaries under the policy in question.

The United States, as defendant, is acting as a mere stakeholder by the filing of its counterclaim for interpleader, but denies that it is liable for interest or costs, but could not safely make payment because of the conflicting claims.

At the time of the issuance of the certificate of insurance on January 1, 1943, the insured named his then wife, Frances Daniel Miles, as principal beneficiary, and one of the plaintiffs, Charlene Miles (now Mrs. Crenshaw) as contingent beneficiary. After several subsequent changes of beneficiary, the insured, on October 8, 1952, and again on January 7, 1957, named his then wife, Lenna Snodgrass Miles (now the third party defendant) as principal beneficiary and named another daughter, Mary Helen (now plaintiff Mary Miles Frakes) as contingent beneficiary.

Howard Miles, the insured, entered the service during the latter part of 1942 just prior to the issuance of the insurance certificate. At the time of his entrance into the service, he was married to Mrs. Frances Daniel Miles, and the three daughters, plaintiffs in this action, are the issue of said marriage.

Evidence indicates that even prior to his induction into the service, Miles had an alcoholic problem. After his discharge from the service, this alcoholic problem became more acute and his first wife, Frances Daniel Miles, divorced the veteran, and the veteran gave little, if any, support to this family. The divorce decree was secured shortly thereafter, and the veteran paid no support or alimony. The evidence showed that the first Mrs. Miles, Frances Daniel Miles, paid the insurance premium on this policy in question for 15 months preceding the date of August 15, 1946, at which time provisions were made to deduct the payments from the veteran's disability payments he was securing from the Veterans Administration. There was also some evidence that these payments for the premiums were made by Frances Daniel Miles with the understanding that these three daughters, plaintiffs, would be the beneficiaries of this insurance.

After a few years, Howard Miles became a member of the Alcoholics Anonymous and, while associated with this organization, became acquainted in the organization with the second Mrs. Miles, Lenna Snodgrass Miles, and thereafter they were married. Apparently, the alcoholic problem again became acute some few days prior to April 27, 1960, and Mrs. Lenna Snodgrass Miles prevailed upon the insured to visit a physician, Dr. Spence McClelland, who recommended

that Miles be sent to the State Sanitarium because of mental incompetency. A sanity hearing was set down for May 2, 1960. On April 27, 1960, Miles was confined to Grady Hospital in Atlanta, pending the hearing of May 2, 1960. The second wife, Mrs. Lenna S. Miles, and three of the plaintiffs all signed the petition for committal in the office of the Ordinary of Fulton County, Georgia. On the day of the hearing, May 2, 1960, while the Sanity Commission, composed of Dr. Charles Beall, Dr. W. A. Arnold, and one Guy Parker, were examining Howard Miles to determine his sanity, one of the daughters withdrew her consent. The Commission never made a formal finding as to the sanity of Miles. This daughter, Mrs. Frakes, testified that when she learned that Miles was to be committed to the State Sanitarium at Milledgeville instead of the Veterans Hospital in Atlanta, she withdrew her consent to the committal.

Thereafter, Miles stayed at Grady Hospital until May 6, 1960, when he was released and went to the home of Mrs. Frakes with the understanding that he would be admitted to the Veterans Hospital in Atlanta. However, May 6th being on Friday, Miles was unable to obtain admittance to the Veterans Hospital until Monday, May 9, 1960. Over the weekend, Miles stayed with Mrs. Frakes, and on Friday night, at the Frakes' home, Miles executed this last change of beneficiary form designating these plaintiffs as recipients of the policy in question.

The evidence show that for several days prior to this Friday night, while at Grady Hospital, Miles had been seeking the proper form for change in beneficiary, and that he arranged for the attorney of the plaintiffs, Attorney Ed Lane, to come to the home of Mrs. Frakes, fill out the proper V. A. form, and witness his signature. Miles signed the change of beneficiary this Friday night, and the change form was forwarded to the Veterans Administration and was received by them on May 13, 1960. Miles was admitted to the Veterans Hospital on Monday, May 9, 1960. Thereafter, Miles died in the Veterans Hospital on May 17, 1960.

In the case at hand, the third party intervenor makes no contention that the insured failed to comply with the statute or the regulation insofar as the mechanics of effecting the change of beneficiary are concerned, and the Court must assume that the change of beneficiary executed on May 6, 1960, was valid, unless the intervenor has established by a preponderance of the evidence that the insured, as of that date, was mentally incompetent to effect the change, or if undue influence was used to coerce the insured into effecting the change.

There is no evidence in the record to indicate undue influence or coercion. The sole question to be decided is whether or not the intervenor has established Miles' incompetency as of May 6, 1960, by a preponderance of evidence. It is admitted, in the pre-trial order, by the intervenor that the burden of proof is upon her to establish by a preponderance of evidence that Miles was incompetent on May 6, 1960.

This Court is of the opinion that Mrs. Lenna S. Miles, the intervenor, has not carried this burden. The evidence without dispute showed that Miles was a heavy drinker and was subject to long drinking periods, and that after one of these sieges, Dr. McClelland advised his family that he should be confined to the State Sanitarium. This occurred on April 27, 1960, at which time Miles was confined to Grady Hospital pending a lunacy hearing before the Court of Ordinary of Fulton County, Georgia, all as provided by Georgia law. Before the hearing was completed, one of the plaintiffs withdrew her consent. However, the Sanity Commission had already examined Miles at Grady Hospital, and one Dr. Charles Beall, a qualified psychiatrist and a member of this Commission, testified at the trial that it was his finding, upon his examination of Miles at Grady Hospital on May 2, 1960, that Miles was not incompetent but was sane. Dr. Beall testified that it was his opinion that on

May 2, 1960, Miles had testamentary capacity to execute a change of beneficiary. Dr. Beall was a qualified psychiatrist and was the last medical witness to examine Miles before the execution of the form change on May 6, 1960, and his testimony clearly indicated, from his examination of May 2, 1960, that if Miles was sober on May 6, 1960, it was his opinion that at the time of the execution of the form Miles was mentally competent.

None of the medical testimony from the Veterans Administration Hospital or the lay testimony from the Alcoholics Anonymous associates of Miles on May 7, 1960, tend to discredit the opinion of Dr. Beall. While it is true that the insured Miles was a very self-willed man and a chronic alcoholic, evidence indicated that this had been his personality and weakness for many years. It was clearly established that at no time between Miles' admission to Grady Hospital on April 27, 1960, until the evening of May 6, 1960 (the date of the change of beneficiary) was there an opportunity for Miles to have consumed any alcohol.

At the time of the execution of the instrument, the evidence shows that Miles had a comprehension of the extent and condition of the policy, and how he was disposing of the policy and to whom.

The contention that Miles was acting under a delusion as to the acts of intervenor (Mrs. Lenna S. Miles) in having him confined is not substantiated by the evidence. There is no evidence that Miles' act in changing the beneficiary was the product or offspring of a delusion. See 57 Am.Jur., Wills, § 81, p. 91.

■ This being a case concerning a National Service Life policy, the Federal law, rather than the law of Georgia, would govern. See Dyke v. Dyke, D.C., 122 F.Supp. 529; Taylor v. United States, D.C., 113 F.Supp. 143. However, in the present case, whether federal or state law governs is immaterial because the federal law and the state law are substantially the same in this regard.

■ To be capable of effecting a valid change of beneficiary, a person should have clearness of mind and memory sufficient to know the nature of the property for which he is about to name a beneficiary, the nature of the act which he is about to perform, the names and identities of those who are the natural objects of his bounty, his relationship towards them, and the consequences of his act, uninfluenced by any material delusion. See 57 Am.Jur., Wills, § 64.

■ The Georgia rule is stated in Spivey v. Spivey, 202 Ga. 644, 651, 44 S.E.2d 224, 229, where it was held:

"A person has testamentary capacity who understands the nature of a testament or will, viz., that it is a disposition of property to take effect afer death, and who is capable of remembering generally the property subject to disposition and the persons related to him by the ties of blood and of affection, and also of conceiving and expressing by words, written or spoken, or by signs, or by both, any intelligible scheme of disposition. If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice."

Applying the law, as above stated, to the facts in the instant case, the Court is of the opinion that on May 6, 1960, Howard Miles did have sufficient mental capacity to know the nature and consequence of his act in changing the beneficiary of his National Service Life Insurance policy, and was not acting under a material delusion, and that he therefore could and did effect a valid change of beneficiaries.

Therefore, plaintiffs are entitled to the proceeds of National Service Life Insurance Policy No. V–511–74–58, which insurance policy was in effect at the time of the insured's death on May 17, 1960.

■ Plaintiffs are not entitled to recover interest and costs against the United States. See United States v. Worley, Administratrix, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887.

This opinion shall constitute the Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Let judgment be entered accordingly.