**Arabella Bunch WILEY, Appellant.**

**v.**

**UNITED STATES of America, and Mrs. J. R. Scott, Appellees.**

**No. 9799.**

United States Court of Appeals
Tenth Circuit.

Sept. 10, 1968.

Bill Breece, Oklahoma City, Okl. (Hamilton & Carson, Oklahoma City, Okl., on the brief), for appellant.

Robert L. Berry, Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., on the brief), for appellee, United States.

John R. McCandless, Oklahoma City, Okl. (Reynolds & Ridings, Oklahoma City, Okl., on the brief), for appellee, Mrs. J. R. Scott.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

HILL, Circuit Judge.

The appeal is from a judgment determining the beneficiaries of two National Service Life Insurance policies. Appellant brought this action against the United States claiming her rights as a beneficiary to recover the proceeds of both policies. The United States then caused Mrs. J. R. Scott to be brought in as a party defendant because she had previously received the proceeds of one policy, and in addition, because she claimed a right to the proceeds of the other policy as to which the United States was a mere stakeholder. A trial was had to the court and with judgment being entered in favor of the appellee, Mrs. Scott, this appeal follows.

The basic facts are without dispute. In April, 1942, the veteran, Otis G. Bunch, applied for and was issued a National Service Life Insurance policy in the amount of $5,000 identified as No. V–1216 2731. Appellant, Arabella Bunch Wiley, who was then the wife of the insured, was designated as the principal beneficiary with the mother of the insured, who predeceased him, named as a contingent beneficiary. On May 1, 1943, the veteran obtained a second $5,-000 life insurance policy numbered V–1720 1281. He designated his then wife Arabella, as the principal beneficiary and his mother and a sister, Mrs. Marian Gatterman, as contingent beneficiaries. Thereafter, and on October 4, 1948, the insured was declared to be an incompetent and for some years thereafter he was a patient in various federal hospitals. In 1950, and during the veteran's continued institutionalization, appellant obtained a final decree of divorce from the insured. Subsequently, on January 3, 1962, the insured executed an official change of beneficiary form in which his sister, the appellee, was named as the principal beneficiary and Mrs. Marian Gatterman as contingent beneficiary. The change of beneficiary form did not specifically refer to either Policy No. V–1216 2731 or Policy No. V–1720 1281, but in the space provided for the insured's file number as well as in the space provided for the number of the policy on which the change was desired, was written the Veterans Administration file number for both of the policies, namely FV–1216 2731.

Following the insured's death on October 13, 1963, a lengthy battle began in the Veterans Administration culminating in a determination by the Board of Veterans Appeals that Mrs. Scott was entitled to the proceeds of both policies. This conclusion was upheld by the court below. However, appellant asserts on appeal that: (1) the insured did not possess the requisite mental capacity necessary to effectuate a valid change of beneficiary; and (2) the insured did not change the beneficiary of Policy No. V–1720 1281.

The contention that the insured was mentally incapable of effecting a valid beneficiary change is based upon two related facts. First, the insured had a long history of mental illness which had resulted in many years of confinement. Second, because this confinement was prompted by the incompetency of the insured, there had been a waiver of insur-

ance premiums which continued in effect until the insured's death. Thus, it is asserted, the insured must have been incompetent when he changed the beneficiary inasmuch as this occurred at a time when the premiums were being waived.

■ This reasoning overlooks the fact that the very agency that had waived the premiums had determined in September, 1961, that the insured was mentally capable. This finding was based upon the affidavit of three Veterans Administration physicians, including two psychiatrists, stating that the insured was competent. A later report from this same agency indicated that, although his memory was defective, the veteran was adjusting well to his release, was holding a job, managing his own financial affairs and generally progressing very well. Likewise, the Circuit Court of Arlington County, Virginia, concurred in this finding of competency by terminating his guardianship in December, 1961. In addition, an affidavit executed by the Veterans Administration representative who assisted the insured in completing the beneficiary change form, indicated that he was of the opinion that the veteran was fully aware of the nature and consequences of his action. It thus becomes obvious that the continuation of the premium waiver is of little significance.[1]

■ Hence, at the time of the execution of the change of beneficiary form the insured had been declared competent by both the Veterans Administration and a state court. Accordingly, under generally recognized principles the presumption is that the insured had the requisite capacity to effectuate a change of beneficiary[2]. To counter this presumption and overcome the evidence of mental capacity, the appellant introduced not one witness, expert or otherwise, that would indicate that on the crucial date when the beneficiary was changed, the insured was other than completely competent. The trial court expressly found the insured to be competent at the time of the change in beneficiaries. It follows that inasmuch as the findings of the trial court will not be set aside unless clearly erroneous,[3] the contention that the insured lacked capacity to change the beneficiary is untenable.

The appellant next contends that the insured did not fulfill the necessary requirements for changing the beneficiary of the second policy. It is conceded that the beneficiary change form, as executed with the assistance of a Veterans Administration representative, was sufficient to change the first policy beneficiary. However, because the form did not contain the number of either policy, we are asked to award the proceeds of the second policy to the ex-wife of the insured, an individual who had not seen the insured for more than a decade prior to his death.

■ This court has on many occasions considered the factors that are necessary in order to sustain a beneficiary change of this type.[4] We have

---

1. This is especially true when it is remembered that the Government has no desire to reassess premium waivers on the same systematic basis typified by commercial insurance procedure. This is because the Government made this insurance available out of a paternalistic interest in the welfare of the members of the armed forces and with no thought of profit. Collins v. United States, 161 F.2d 64, 69 (10th Cir. 1947). Accordingly, it is unreasonable to draw any meaningful conclusions from the failure to demand premium payments immediately upon the regaining of competency by the insured.

2. Frakes v. United States, 228 F.Supp. 475 (N.D.Ga.1964) ; Morris v. United States, 217 F.Supp. 220 (W.D.Tex.1963) ; and Taylor v. United States, 113 F.Supp. 143 (W.D.Ark.1953) ; affirmed 211 F.2d 794 (8th Cir. 1954).

3. Fed.R.Civ.P. 52; Wells v. Ruiz, 372 F. 2d 119 (10th Cir. 1967) ; and Lovato v. United States, 295 F.2d 78 (10th Cir. 1961).

4. E. g., Wells v. Ruiz, 372 F.2d 119 (10th Cir. 1967) ; Lovato v. United States, 295 F.2d 78 (10th Cir. 1961) ; Blair v. United States, 260 F.2d 237 (10th Cir. 1958) ; Littlefield v. Littlefield, 194 F.2d 695

adopted the substantial compliance doctrine under which attempts by an insured to change the beneficiary will be liberally construed if the intention to effectuate the change is complimented by an affirmative act reasonably tending to manifest such intent. "In such a case, technicalities will not be permitted to thwart the express desire of the insured. * * *." Collins v. United States, 161 F.2d 64, 69 (10th Cir.1947). In short, the insured need not comply literally with all administrative technicalities so long as he might reasonably be supposed to have thought his actions sufficient under the circumstances.

 Here the insured visited his local Veterans Administration office, informing the personnel there that he had insurance and desired to ensure that the proceeds go to his sister, Mrs. Scott, as the only person that had expressed any real concern for his welfare over a period in excess of twenty years. To this end, he signed a form prepared by that office which contained all the information he possessed as to policy number, date of issuance, and the like. Because he had not himself paid the premiums for many years, he mistakenly thought that he had but one $5,000 policy. Nevertheless, he indicated that his insurance was designated by the number FV–1216 2731. Unknown to him, this number was not a policy number but rather the Veterans Administration file number which contained the two separately issued policies. The information supplied adequately identified both policy locations and reflected the insured's intention to change the beneficiary on all the insurance therein. To hold that the insured's failure to identify both policies by number was insufficient to work a beneficiary change, would not only penalize the insured for the slovenly handling of the matter by the Veterans Administration, but would be a repudiation

of the oft stated principle that in circumstances such as these, "literal compliance with the technical requirements established by regulation for accomplishing a change of beneficiary is not essential * * *." Lovato v. United States, 295 F.2d 78, 79 (10th Cir.1961). Accordingly, we hold that the insured's manifest intent, when accompanied by the affirmative act of executing the official change of beneficiary form, was sufficient to accomplish a beneficiary change even though the form was technically incomplete in that it failed to include the correct policy numbers.

Affirmed.

(10th Cir. 1952); Boring v. United States, 181 F.2d 931 (10th Cir. 1950); Widney v. United States, 178 F.2d 880 (10th Cir. 1949); Collins v. United States, 161 F.2d 64 (10th Cir. 1947); cert. denied 331 U.S. 859, 67 S.Ct. 1756, 91 L.Ed. 1866; and Bradley v. United States, 143 F.2d 573 (10th Cir. 1944) cert. denied 323 U.S. 793, 65 S.Ct. 429, 89 L.Ed. 632.